THE AGRICULTURAL INSURANCE COMPANY OF WATER-TOWN, N. Y., PLAINTIFF IN ERROR, v. SARAH V. POTTS, DEFENDANT IN ERROR.

1. A statement made by the general agent of a corporation, in the course of his employment, of a fact within his official knowledge touching the *status* of a matter entrusted to him, is admissible in evidence on behalf of the party with whom the corporation was dealing at the time.

2. Plaintiff, who was insured against fire in defendant's company, obtained further insurance on her dwelling, which, unless consented to in writing by the defendant, voided its policy. There was testimony competent to prove that after obtaining the additional insurance the insured notified the special agents of the defendant, who undertook to communicate with the insurer and to let plaintiff know the result. There was also proof of an admission made by defendant's general manager from which it could be inferred that the company had received actual notice of these facts and had directed the agents to cancel plaintiff's policy, which they neglected to do until after the plaintiff's dwelling was destroyed by fire. Upon an action on the policy, *Held*, that a non-suit was properly refused; there being proof from which the jury might find that the defendant was estopped by its conduct from setting up the forfeiture of the plaintiff's policy

On error to the Supreme Court.

For the plaintiff in error, *James Buchanan* and *A. H. Sawyer*.

For the defendant in error, *John S. Voorhees*.

The opinion of the court was delivered by

GARRISON, J.   The sole error assigned is the refusal of the trial court to non-suit the plaintiff.   The action is brought upon a policy of insurance issued by the defendant indemnifying the plaintiff against loss by fire to the amount of $1,500 upon her dwelling.   The policy contains, amongst other things, a stipulation in these words : " If any other insurance has been or shall hereafter be made upon the property hereby insured, or any part thereof, or any interest therein, whether such insurance is valid or invalid, this entire policy and every part thereof shall be null and void, unless the written consent of the company at the New York city office is obtained.   In case such consent is applied for and refused the company will pay to the assured the unearned premium."   The policy also declares that " no agent is permitted to give the consent of the company in any other case required by the provisions of this policy, or to waive any stipulation or condition contained therein ; but in all cases where the consent of the company is required by this policy, other than consent to the assignment of the policy, such consent must be obtained in writing and at the New York city office."

The policy was obtained through Wright & Marsh, insurance agents, at Princeton, in this state, who received the premium for the company and delivered the policy to the plaintiff.   The policy was issued in 1885.   On the 3d day of January, 1888, the plaintiff insured her said dwelling in the additional amount of $300 in the Liverpool, London and Globe Insurance Company.   The plaintiff testified that the day after she got this latter insurance she went to Princeton to the office of Wright & Marsh, having with her the policy in defendant's company, and told Mr. Marsh that she had taken out more insurance on her building, whereupon Marsh requested his partner to " see

to it." The plaintiff's narrative of what then occurred is as follows: "Mr. Wright got up from his desk and went to a drawer and took out a paper with marks of a building on it and wrote something on it and put it back again. Mr. Marsh was present and asked me with whom I had insured and where and I distinctly told him, and he said, 'It is all right; perhaps the Agricultural Company may cancel your policy if they think you have too much on your buildings, but we will let you know in a few days.'" This was on January 4th, and on the 20th day of May, of the same year, the plaintiff's dwelling was destroyed by fire, neither Marsh & Wright nor the Agricultural company having communicated with the plaintiff in the meantime. It is also in evidence that after the occurrence of the fire Mr. Patterson, the general agent of the defendant, in charge of its New York office, visited the scene of the fire and drew up and obtained the signature of the plaintiff to the formal proofs of loss and attempted to adjust the same for a sum less than the value of the policy.

The plaintiff also called as her witness Crowell Marsh, of the firm of Wright & Marsh, who testified that he was the agent of the defendant company at Princeton and that the custom of the company with respect to applications for further insurance was that the local agent, if he deemed the request reasonable and right, wrote on the policy the endorsement "Other insurance permitted," and reported the fact to the company, who, if they dissented, ordered him "to cancel the policy, to take it up." He further testified that it was not the practice of the company to make any endorsement itself, but merely to sanction his endorsement or to order him to cancel the policy, and that in all the number of years he had had dealings with the company he could recollect no case in which the endorsement on any policy obtained through his firm had been made by anybody other than himself or his partner, and that they never knew any person other than Mr. Patterson as the representative of the company. The custom of the company in this respect was likewise shown by individual instances in which it had been followed, and by the endorsement on

plaintiff's policy of the words "The Buildings insured under this policy are now in possession and occupied by tenant. Endorsed May 1, 1885, Marsh & Wright, agents."

There was no proof of any custom by which the agents of the defendant were permitted to give the assent of the company in cases where additional insurance had already been actually obtained. In this state of the proofs the court was asked to non-suit the plaintiff upon the ground that the policy sued on by its terms had become null and void by reason of the further insurance of the property comprised therein without the written consent of the defendant at its New York city office.

All of the facts assumed in this proposition are indubitably established by the plaintiff's proofs. So that the question presented is whether in the face of these facts there was any ground of recovery upon which the case should have gone to the jury. The points chiefly argued in this court were: "*First*, as to the power of an agent to waive the conditions of the policy in the face of its express declaration that such power was not delegated;" and "*Secondly*, Whether the defendant company, by sanctioning endorsements made by its agents upon policies where further insurance was contemplated, had clothed such agents with apparent authority to continue in force a policy that, by its terms, had become null and void because such further insurance had already been actually obtained?" Any discussion of the implied powers of agents to waive the express conditions of written contracts would seem, however, to be far-fetched in the present case, in view of the uncontroverted testimony as to the conduct of the insurance company itself. It is in evidence that Mr. Patterson, the general agent of the defending corporation, visited the plaintiff after the fire upon the business of the defendant and endeavored to adjust her loss for a sum less than the amount insured, averring, amongst other things, on behalf of the company he was representing, that "they had notified the agent to cancel this policy, but it had been neglected." By this declaration the defendant's agent imparted pertinent information touching

matters to the consideration of which he had invited the plaintiff. It was made in the supposed interest of his principal and was part of the *res gestœ.* A statement made by a general agent of a corporation, in the course of his employment, as to a fact within his official knowledge touching the *status* of a matter entrusted to him, is admissible in evidence on behalf of the party with whom the corporation was dealing. *Whart. Ev.*, § 1173; *Runk* v. *Ten Eyck*, 4 *Zab.* 756.

From this declaration of the defendant's general manager it was competent for a jury to infer that actual notice had been received by the defendant of some state of affairs respecting plaintiff's risk that justified, in defendant's opinion, a cancellation of her policy; and inasmuch as the only fact of this nature of which the case gives any indication, is that communicated by the plaintiff to Wright & Marsh, a further inference might be that the local agents had forwarded the information received by them to the company as they promised plaintiff they would do, and that the company, taking the view of the risk intimated by Wright & Marsh to the plaintiff, had decided upon the cancellation of her policy, and that Wright & Marsh were the agents whom Mr. Patterson had in mind when he said that the company had notified the agent to cancel the policy in question. At all events, the evidence referred to, if not free from ambiguity standing alone, when taken in connection with the rest of the plaintiff's testimony, was competent proof to go to the jury for the purpose of establishing the following facts:

*First.* That the company had actual knowledge of the condition of the plaintiff's insurance and of her submission of the matter to the local agents who forwarded the information.

*Second.* That the defendant recognized the duty of acting decisively upon the facts thus submitted and had actually made its decision.

*Third.* That the defendant had entrusted the execution of the decision thus reached to Wright & Marsh. That Wright & Marsh did nothing toward carrying into execution this decision of the company during the months that preceded the

fire, is an admitted fact, and it must, I think, be likewise admitted that the plaintiff was damnified by reason of their negligence. All of the evidence points conclusively to the fact that it was the settled purpose and constant practice of the plaintiff to keep her dwelling fully insured. The very circumstance of her obtaining from the Liverpool, London and Globe company an insurance of $300 in addition to the sum of $1,500 already placed in the defendant company, repels the notion that she would have allowed her dwelling to remain practically uninsured had the decision of the latter company canceling its policy been made known to her. At the close of the plaintiff's case, therefore, there was testimony competent to prove that the plaintiff had in good faith submitted to her insurers actual knowledge of a state of facts that placed it wholly within their power either to continue their contract of indemnity or to relieve themselves of all obligation respecting it; that they took the matter under advisement and decided upon the latter course, which decision, owing to the laches of the agent to whom its execution was entrusted, was not communicated to the insured until she had been injured by fire. The case thus presented would, in my opinion, come within the elemental rule of estoppel that in dealing with others no one shall be permitted to deny that he intended the natural consequences of his conduct when such conduct has, in fact, induced others to rely upon it to their loss. The natural consequence of the failure of the company to communicate to the plaintiff its decision was to induce in her the belief that it acquiesced in the further insurance of which she had given notice, and so long as this belief continued she was lulled into a false security with respect to her property. After the loss had occurred it was too late for the company to set up for the first time, in avoidance of its obligation, the very state of facts with full knowledge of which it had permitted the plaintiff to rest secure in her proposed protection. In *New York Life Insurance Co.* v. *Eccleston,* 96 *U. S.* 572, the policy provided for an absolute forfeiture in the event of the non-payment of any premium. The last

installment of premium remained unpaid at the death of insured. At the trial the plaintiff proved that the company had several times changed its agents, and had each time notified the insured where to pay his premium, and that while waiting for such information the last installment had become overdue and so remained at the time of the death of the insured. Mr. Justice Bradley affirmed the charge of the trial court, leaving the question of fact to the jury, saying: "Any course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture though it might be claimed under the express letter of the contract." And to a like effect are *Phœnix Mutual Life Insurance Co.* v. *Doster*, 106 *U. S.* 30; *Combs* v. *Shrewsbury Insurance Co.*, 7 *Stew. Eq.* 403; *Redstrake* v. *Cumberland Insurance Co.*, 15 *Vroom* 294, 300.

That Wright & Marsh, in respect to the cancellation of plaintiff's policy, were the agents of the defendant and not of the plaintiff, cannot be seriously questioned. Granting that they were her agents for the purpose of communicating to the defendant the *status* of her insurance, the company, by entrusting them with the execution of its decision touching a matter solely within its power, constituted them its agents, so that their negligence in this respect was the negligence of the insurer. There is, it is needless to say, a marked distinction between cases such as this, in which notice given to an agent is, in point of fact, communicated to the principal, and those in which the principal is charged upon mere proof of notice to an agent. In the former case the power of the agent to bind his principal is limited by the scope of his actual or apparent authority; whereas, in the latter case, no question of agency arises, the sole question being as to the legal duties of the principals themselves, growing out of knowledge actually imparted. For a like reason the present case is uncomplicated by any question as to the delegation of the power of

waiver. Whatever difference of opinion may exist as to the effect of notice to, or of waiver by, a special agent in a given case, there can be no diversity of sentiment as to the plenary power of a party to a contract to waive any condition intended for his benefit, either before or after forfeiture, whether by express declaration or by conduct so misleading that it estops him afterward from claiming the forfeiture.

Our conclusion upon the case before us is, that the trial court, in refusing the defendant's motion to non-suit the plaintiff, ruled correctly, and that the judgment recovered should be affirmed, with costs.

REED, J. (dissenting). I am unable to concur in the result reached by the majority of the court in this case, or to acquiesce in the reasoning which leads to it. As appears in the prevailing opinion, the policy sued upon became null and void if any other insurance should be made upon the property insured, unless the written consent of the company, at the New York city office, was obtained. The practice which had obtained in the conduct of the company's business modified the clause requiring the written consent of the company at the New York office to additional insurance in one particular, namely, the company's agents at Princeton had the authority to give such written consent at Princeton, by the direction of the New York office to be given, in each case. Apart from this, there was no modification of the contract between insurer and insured. It is admitted that additional insurance was effected upon the property insured by the present policy. It is admitted that no consent of the company, either at the New York office or at the office of the local agents in Princeton, was ever given.

The liability of the company is decided, by this court, to rest upon an estoppel. This estoppel is grounded upon a remark made by Mr. Patterson, the general agent of the defendants, in charge of the New York office. He, as the plaintiff testifies, when he obtained the proof of loss, said that they had notified the local agents to cancel this policy, but it

had been neglected. From this remark it is said that the
jury could have inferred, first, that Wright & Marsh, of
Princeton, the Princeton agents, had reported to the New
York office the fact that additional insurance had been ob-
tained, and, second, that the New York office had concluded
to cancel the policy, and had notified Wright & Marsh to that
effect, and that these gentlemen had failed to notify the in-
sured of the cancellation. From these circumstances it is
concluded that the insured was lured into a belief that her
property was still insured in defendants' company, and the
jury could have inferred that, had she been informed of the
cancellation, she would have substituted other insurance for
the canceled insurance before the occurrence of the fire.

Now, in the first place, it does not seem to me that the
remark of Mr. Patterson adds anything to the plaintiff's case
in respect to the estoppel upon which it rests. For it is obvi-
ous that the duty of the local agents at Princeton, to forward
to the New York office any notice given to them of additional
insurance, was just as obligatory as was their duty to forward
to the insured any notice they had received, from the New
York office, of consent or cancellation. If, therefore, their
failure to communicate the latter notice to the insured was a
neglect which estopped the company, it would seem that a
neglect to communicate a former notification would equally
estop the company. In my judgment, under the condition in
the present policy, a failure to perform either of these duties
would not result in an estoppel. It is observable that the
condition of this policy is not as in some policies, that unless
notice of additional insurance shall be given within a reason-
able time, the policy shall be void, or similar language which
imports that the policy shall survive for a period after the
additional insurance is obtained. In respect to policies having
conditions containing language like *that last mentioned,* cases
can be found in which a delay upon the part of the company
to respond either favorably or unfavorably to a notification
of additional insurance, is held to conclude the company from
asserting its dissent. Regarding the soundness of these cases,

no opinion is expressed. The condition, however, in this policy is entirely unlike the conditions in those mentioned. Its language is that, "If any other insurance has been or shall hereafter be made upon the property hereby insured, or any part thereof or any interest therein, whether such insurance is valid or invalid, this entire policy and every part thereof shall be null and void, unless the written consent of the company at New York city office is obtained." The policy, therefore, is *ipso facto* void the moment any additional insurance is obtained without consent. If the insured chooses to get the second insurance before such assent is obtained, the insured takes the risk. The effect of such an act is plain, for the stipulation is unmistakable, that, from the moment the second insurance is effected, the policy is void. It can only be revived by a subsequent written consent. The act of the company in thus renewing the policy, is exactly the same as the acceptance of a new risk. If this delay in announcing its conclusion to accept or refuse the renewal of a policy after the additional insurance is effected can estop the company from denying such renewal, I see no reason why a delay in accepting or refusing any risk offered will not estop the company from denying that a policy is executed. And if this doctrine is applied to all contracts, then any unreasonable delay in accepting or refusing any proposal, which delay has resulted in preventing the proposer from executing other contracts with other persons, would result in a similar estoppel. I shall vote to reverse.

Justices Dixon and Magie concur in these views.

*For affirmance*—THE CHANCELLOR, DEPUE, GARRISON, VAN SYCKEL, BOGERT, BROWN, SMITH.   7.

*For reversal*—DIXON, MAGIE, REED.   3.