Cunningham, Presiding Judge.
Johnson, plaintiff in error, to whom we shall hereafter refer as defendant, on March 30, 1907, entered the banking house of the defendant in error, to whom we shall refer as plaintiff, where and when he paid a certain sum of money to one of plaintiff’s tellers, and received therefor a certificate of deposit in the sum of $315. The controversy out of which this action grows arises over the contention as to the amount of money actually paid to the teller by defendant. Plaintiff contends that it received hut $35, while the defendant insists that he paid $315, the full amount of the certificate of deposit issued to him. When defendant delivered his money to the teller, that official filled in a partly printed slip or ticket by writing certain figures thereon and placing an initial letter indicating that a certificate of deposit was desired, and passed the same to a clerk of the bank. Thereupon the clerk wrote out a certificate of deposit to W. J. John *25 son for $315.00, and, after having the same signed by a third official of the bank, handed it, together with the tickét which he had received from the teller, back to the teller, who, looking at the ticket, called out the name N. J. Johnson, whereupon the defendant stepped up and received from- the teller the certificate of deposit for $315, and left the bank. At the close of the day the teller made up his books, which correspond with his cash. The clerk likewise made up his account of the day’s business, and by comparing the same with the teller’s account it was at once discovered that the clerk’s account showed that he had issued drafts to the amount of $280 in excess of what the book or account of the teller indicated, whereas they ought to have corresponded. Thereupon the teller, in checking over the clerk’s account with the tickets which he had handed to and received back from the clerk, discovered, as he says, that the Johnson ticket was meant by him for $35 only, and the clerk had read it $315. Thus the discrepancy, on the theory of the plaintiff, was ex-' plained. Promptly the bank wrote two letters, addressed to parties by the name N. J. Johnson, who the directory showed lived in different parts of the city. One letter was returned to the bank with the notation that the party had moved. The other letter, addressed to the street number where the defendant had lived for many years, was never returned to the bank, although the return card of the bank was upon the envelope so addressed. This letter the defendant denies ever having received. A few days later a representative of the bank called upon the defendant and advised him that an error had been made in his certificate of deposit, and asked him to come to the bank. This the defendant declined to do, and disputed the statement that there had been any error, or, if so, that the error “was not on him,” to use his language. Still later two representatives of the bank called on the *26 defendant, with the same result. On June 13, 1907, the bank filed its complaint in the district court, alleging its error or mistake in the issuance of the certificate of deposit substantially as we have stated; its inability to induce the defendant to surrender the certificate, or to permit its correction; the insolvency of the defendant; its want of a speedy or adequate remedy; that the defendant threatened and was about to negotiate the certificate, and the irreparable damage that such negotiation would entail upon it. Plaintiff further offered in its complaint to deliver to defendant a certificate of deposit for $35, and prayed for a mandatory writ of injunction requiring defendant to deliver the certificate to it, or to the clerk of the court; for a temporary writ restraining the transfer of the certificate, and for other equitable relief.
In due time a temporary restraining order was issued, and after certain proceedings the defendant answered, admitting the receipt of the certificate for $315, and alleging that he had paid $315 in money to the bank therefor. The insolvency of the defendant was not denied in the answer, and in an affidavit filed by him during the proceedings his insolvency was admitted. The summons was served personally on the defendant on June 14th. On the same day the defendant negotiated the certificate of deposit by purchasing -from a clothing house a suit of clothes for $15, and receiving the difference between that amount and the face of the certificate, $300, in cash. The court found that the defendant had transferred the certificate of deposit to an innocent third party, for value, after the commencement of the suit, and the service of summons upon him. Other general findings were in favor of the bank, and the defendant was ordered by the court to pay in to the clerk of the court for the use of the bank $280, together with interest. After various citations, and after the defendant had been com *27 mitted, lie paid a portion of the judgment, and thereupon sued out the writ of error upon which this hearing proceeds.
1. On the trial of the cause on its merits the defendant testified unequivocally to the payment of $315 to the bank, describing with great accuracy the denomination of the bills, their appearance, and even the numbers thereof, that is, as to fourteen of them which he said were'$20 gold certificates, numbered consecutively. These bills the defendant contended were new. It seemed to be his theory that the bank had treated them as bills that had never been emitted, and that its discrepancy in cash could be. accounted for in this way. One witness introduced by defendant testified that he had cashed a check for defendant a few days before the transaction in question, in which he had paid him twelve or fourteen new gold certificates such as defendant described. His wife and son also testified to having seen him in the possession of such bills at or about the date of the deposit. In many respects defendant’s testimony, and that given by members of his family, was far from satisfactory, particularly on the question of the source from whence he had acquired the funds which he deposited. In other respects the testimony of the defendant was in hopeless conflict with the two representatives of the bank who called upon him prior to the bringing of the suit. We think, from a reading of the record, that the testimony of the teller who received the money does not fairly show that he had any distinct recollection as to the amount of money he received, but relied for his information upon this point on what he claims the ticket made out by him at the time he received the money, and which he passed to the clerk as hereinabove detailed, discloses. The original ticket is brought up by bill of exceptions and is before" us. It must be admitted that the figures on the *28 same might well be taken for $315 instead of $35. Indeed, we believe they would be so understood and read, in the absence of all other evidence, by an ordinary person. An expert witness was called by plaintiff, who, after examining many similar tickets made by the bank’s teller, gave it as his, opinion that it was intended by the teller- to represent $35, rather than $315. We think it very questionable whether this is a subject for expert testimony, and would be inclined to rule that its admission was erroneous and prejudicial had the case been tried to a jury, but the case was tried to the court without a jury — a feature to which we shall presently direct our attention.
It seems probable that the teller intended the figures, when he made them, to represent $35, and in making up his book from these tickets he must have so read them. Otherwise his account and his cash would not have balanced. The clerk who wrote the certificate, it will be remembered, was intrusted with no cash and handled none, his .duty being to write the certificates, drafts and instruments of that sort from the memoranda furnished him by the teller. Had -the conduct of the defendant throughout been characterized by open frankness and honesty, the correctness of the trial court’s judgment might well be questioned. But he admits having twice had notice of the bank’s claim of error, and it seems probable that he received the letter written by the bank, which did not purport to state what the error consisted of, but simply that an error had been made, and asked him to call that the same might be corrected. There had been an error made by the clerk in writing the defendant’s name in the certificate of deposit, which, as we have stated, showed the name as W. J. Johnson instead of N. J. Johnson, and is written with unusual legibility. Moreover, the circumstance and time of the negotiation *29 of the certificate by the defendant, as detailed above, is suspicions, to say the least, and tends to indicate a disposition on his part to so shape conditions as to prevent the bank from profiting by any judgment that it might obtain against him. We are satisfied that the evidence is sufficient to sustain the judgment which the trial court rendered in favor of the bank.
2. The principal contention urged in the brief filed on behalf of Johnson is predicated upon the refusal of the trial court to grant his request for a jury. The correctness of the trial court’s ruling in this behalf turns entirely upon whether the action was one at law or equitable in its nature.. If a law case, then the defendant was entitled to a jury trial. If the action was equitable, the defendant was not entitled, as a matter of right, to a trial by jury, and if a jury had been called its verdict would have been merely advisory and could have been disregarded by the court. The authorities on this question have been collated by Mr. Justice Bailey in McClelland v. Bullis, 34 Colo., 79, 81 Pac., 771.
It is true that there was a sharp issue of fact involved in the case, but this is not sufficient or necessarily important in determining whether the action was legal or equitable. ■ .
“Issues of law, as well as of fact, are triable by the court without a jury, subject, of course, to the discretion of the court to submit issues of fact to a jury, whose findings, however, would not be binding upon the conscience of the chancellor.” — Koch v. Story, 47 Colo., 339, 107 Pac., 1095.
In Cree v. Lewis, 49 Colo., 190, 112 Pac., 327, it is said:
“The fact that plaintiff asked for a money judgment is by no means decisive that the action was one at law. ’ ’
*30 And, at page 191, same case:
“Wrongfully converting funds which, belong to another does not create the relation of debtor and creditor, 'and nothing more. The owner of such funds may resort to a suit in equity to recover them if the facts justify that character of action.”
Again, page 192 :
“The fact that plaintiff might have contented himself with an action in assumpsit to establish and enforce his rights did not destroy his right to resort to a court of equity in order to do so. In the circumstances of this case, the choice of remedies rested with him.”
See also Zobel v. Fannie Rawlings Co., 49 Colo., 134-41, 111 Pac., 843, wherein it is ruled that:
“The court, having obtained jurisdiction of a cause, administers both equitable and legal relief in order to effect complete determination of the controversy and to settle the respective rights and liabilities of all the parties.” — Kyle v. Shore, 18 Colo. App., 358, 71 Pac., 895.
In the case at bar only equitable relief was asked. It was an action brought solely for the purpose of correcting a written instrument so that the sainé might speak the truth, or express the .intent of the parties, and to preserve the statu quo pending the action. The instrument upon which the suit was based was negotiable; the defendant was threatening to negotiate the same, and he was insolvent. These facts are undisputed.
“The correction of mistakes in written instruments, occurring, by accident, fraud, or otherwise, has been one of the acknowledged branches of equity jurisprudence from the earliest history of the court. This jurisdiction exists, first, where there is a mutual mistake; second, where there has been a mistake of one party, accompan *31 ied by fraud or other inequitable conduct of the remaining parties.” — Graham v. Guinn (Tenn. Ct. Chan. App.), 43 S. W., 751.
Decided March 10, A. D. 1913.
Rehearing, denied April 14, A. D. 1913.
As a condition precedent to the plaintiff’s right to recover in this case it was obliged to establish the error or mistake alleged and procure the correction of the outstanding certificate of deposit, if the same still remained the property of- defendant. This, by all the authorities, required the interposition of a court of equity or a tribunal possessing and exercising equitable jurisdiction. Indeed, no other -relief was sought.
“The right to have an issue of fact tried by a jury is not determined by the nature of the issue, but by the character of the action in which such issue is joined.”— Cree v. Lewis, supra.
“That a court of equity has power to compel the surrender of a worthless or invalid bond, or other instrument, which is negotiable and unmatured, and consequently in a condition to be used to the prejudice of the person who executed it, is a doctrine too familiar to need the citation of authorities in its support.” — City v. Baker, 51 N. J. Eq., 59, 26 Atl., 27.
For other authorities supporting the conclusion that we have reached that this is an equitable action and triable to the court without a jury, see: Ellsworth v. Holcomb, 28 Ohio St., 166; Rowland v. Entrekin, 27 Ohio St., 47; Lyle v. Williamson, 29 T. B. Mon. (Ky.), 142; Goodloe v. McLanathan, Id., 310; Monett v. Turpey, 132 Ind., 482, 32 N. E. 328; Wyche v. Green, 11 Ga., 159; English & Co. v. Thorne, 96 Ga., 557, 23 S. E., 843; Ivinson v. Hutton, 98 U. S., 79, 25 L. Ed., 66; Gould v. Emerson, 160 Mass., 438, 35 N. E., 1065, 39 Am. St., 501.
The judgment of the district court is affirmed.