No. 20806.

MARY K. RYAN, ASSIGNEE *v*. JACK VICKERS.
(406 P.2d 794)

Decided October 4, 1965.     Rehearing denied November 8, 1965.

THOMAS D. SMART, JOHN H. TIPPIT, for plaintiff in error.

SHIVERS, BANTA & McMARTIN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

MARY K. RYAN, as the assignee of one E. M. Johnson and Metallurgical Coals Inc., a West Virginia Corporation, made claim against Jack Vickers for damages in

the sum of $183,105.64 which allegedly resulted from Vickers' breach of contract. Upon trial, after Ryan had completed the presentation of her evidence, Vickers pursuant to Rule 41(b), R.C.P. Colo. moved for an involuntary dismissal of her claim for relief. This motion was granted and the trial court accordingly entered a judgment dismissing Ryan's claim. It is this judgment which by writ of error Ryan now seeks to reverse.

It is agreed that in resolving this controversy we must view the evidence in a light most favorable to the plaintiff, against whom the motion to dismiss was interposed and granted. See *Union Pacific Railway Co. v. Shupe*, 131 Colo. 271, 280 P.2d 1115.

Accordingly, Ryan's evidence established, at least *prima facie*, the following:

1. E. M. Johnson and Metallurgical Coals were the owners of certain land situate in the State of West Virginia, which land was under lease to the J F Coal Corporation, another West Virginia corporation;

2. this land was leased to J F Coal for the purpose of mining coal therefrom, and under the terms of the several leases J F Coal was obligated to pay E. M. Johnson and Metallurgical Coals certain rents, plus additional royalties on coal actually mined;

3. Jack Vickers and other members of his family, as well as certain of his business associates, were stockholders in J F Coal;

4. in the several months before September 9, 1959 J F Coal became hopelessly in debt to the tune of about one million dollars, as of that date owing, among others, E. M. Johnson and Metallurgical Coals about $75,000 in unpaid rent and royalties, and also owing the Small Business Administration some $250,000;

5. on September 9, 1959 Jack Vickers, and his lawyer, held a meeting with E. M. Johnson and representatives of Metallurgical Coals, and their lawyer, the meeting being held in the home of E. M. Johnson in West Virginia;

6. this meeting was held at the request of Jack Vickers, who as of that time intended to form a new coal mining company and, in connection therewith, desired that E. M. Johnson and Metallurgical Coals lease to this new company, when formed, the same properties which were then under lease to the bankrupt J F Coal, such new leases to be on the same terms and conditions as the old ones;

7. at this meeting E. M. Johnson and Metallurgical Coals verbally agreed to lease these properties to the coal mining company which Jack Vickers was about to form, the terms of the leases to be the same as the several leases then held by J F Coal, with a minor modification agreed to by the parties as to the notice required in the case of a default;

8. on this same occasion, and as a part and parcel of the foregoing verbal agreement, Vickers also verbally agreed to make E. M. Johnson and Metallurgical Coals "whole" as to the amount of the indebtedness of J F Coal to them for the unpaid rent and royalties, this promise to cover not only existing indebtedness but such further and additional indebtedness as might accrue until such time as the existing leases to J F Coal could be canceled and new leases given the company which Vickers proposed to form;

9. at this same meeting and also as a part and parcel of the verbal agreement between the parties, E. M. Johnson and Metallurgical Coals and their lawyer informed Vickers and his lawyer that as landlords they not only held a landlord's lien on the mining machinery and equipment of J F Coal, which machinery and equipment was estimated to have a value of $500,000, but also that their lien under local law took precedence over all other liens or claims, including that of the Small Business Administration;

10. at this meeting of September 9, 1959 E. M. Johnson and Metallurgical Coals verbally agreed to take all

necessary legal steps to immediately cancel the existing leases to J F Coal;

11. E. M. Johnson and Metallurgical Coals also verbally agreed to bid at the foreclosure sale of J F Coal's mining machinery and equipment to the extent of their first and prior landlord's lien and to also bid over and above the amount of their lien, if requested to do so by Vickers, all conditioned upon Vickers' furnishing the additional sums of money to support such additional and further bidding; and

12. upon September 24, 1959 a written memorandum embodying the terms of their verbal agreement was signed by the attorneys for E. M. Johnson and Metallurgical Coals and Jack Vickers respectively, the attorneys having been empowered by the parties to sign the written memorandum in their behalf.

It was on the basis of an alleged verbal contract entered into by the parties on September 9, 1959 that Ryan, as assignee, made claim against Vickers for damage flowing from Vickers' alleged breach thereof, contending that her assignors had performed all of their obligations under the verbal contract, but that Vickers had failed to pay them for the unpaid rent and royalties due them from J F Coal.

Upon trial it developed that the landlord's lien of E. M. Johnson and Metallurgical Coals was *not* prior to the lien of the Small Business Administration, and on the contrary that the lien of the Small Business Administration had priority over their lien.

As already noted, when Ryan concluded the presentation of her evidence, the trial court upon motion dismissed her claim, holding that all parties to the agreement were of the "mistaken belief that the plaintiffs held a first lien on the property of J F Coal Corporation," all of which was held to be a mutual mistake of "both law and fact" which excused Vickers from performing his promises as called for by their agreement.

Vickers contends that such was quite proper for the

reason that there was indeed a "mutual mistake of fact and law" in that all concerned were of the mistaken belief that E. M. Johnson and Metallurgical Coals had a first and prior landlord's lien on the mining machinery and equipment of J F Coal, when in fact they did not. As an off-shoot of the foregoing, Vickers argues that Ryan's assignors did not perform their obligations under the alleged verbal contract in that they did not bid at the forced sale of J F Coal's machinery and equipment to the extent of their alleged first lien, or at all.

It is the basic position of Ryan that there was no "mistake," be it of fact or law, and that as of September 9, 1959 her assignors *did* have a landlord's lien against the machinery and equipment of J F Coal which took priority over all other liens or claims of the unpaid creditors of J F Coal, including that of the Small Business Administration. The fact that it later developed that their lien rights were inferior to those of the Small Business Administration represents, it is claimed, a "change in the law," rather than any mistake of law. It is asserted by Ryan that — as the law existed on September 9, 1959 — there was a valid and enforceable contract, and that a contract which is valid and enforceable when made remains such even though there be a subsequent *change* in the law.

In our considered view the action of the trial court was under the circumstances quite correct and its judgment must therefore be affirmed.

There is no dispute but that as of both September 9, 1959 (the date of the alleged verbal contract between the parties) and also as of September 24, 1959 (the date when the written memorandum was signed by the attorneys for the respective parties) E. M. Johnson, the representative of Metallurgical Coals, and Jack Vickers, as well as their respective attorneys, were all of the belief that E. M. Johnson and Metallurgical Coals were possessed of a landlord's lien against the machinery and

equipment of the bankrupt J F Coal which was a first and prior lien on such property and as such took precedence over any claim or lien of the Small Business Administration. Nor is there any dispute but that it was ultimately determined in the United States District Court for the Southern District of West Virginia that this belief was a mistaken one and that acually the Small Business Administration's lien was the first and prior lien against the machinery and equipment of J F Coal — and not the liens of Johnson and Metallurgical Coals.

We reject plaintiff's contention that the foregoing represented a "change in the law" — as opposed to a mistake — and that being only a change in the law the general rule that a contract will not be set aside where a subsequent decision by a court of last resort overrules a prior decision of the same court must prevail. We do not so view the matter. At least our attention has not been directed to any judicial declaration antedating September 9, 1959 — the date of the alleged verbal contract between the parties — which held that a West Virginia landlord's lien had priority over a lien of the Small Business Administration. And as already noted, when plaintiff's assignors later sought to foreclose their landlord's lien it was held that their lien was inferior to that of the Small Business Administration.

Hence, rather than any "change" in the law, we view this as a mutual mistake of law; or perhaps more accurately a mutual mistake as to the applicability of existing law to the factual situation here at hand, and that the mistake is of such nature as to constitute an exception to the general rule that a mistake of law will not vitiate a contract.

In 17 C.J.S. p. 900, such exception is discussed as follows:

"To the general rule . . . . that mistake of law is no ground for relief there are certain exceptions, or apparent exceptions . . . .

"Mistake as to particular private rights may be treated as a mistake of fact, or as a mixed mistake of law and fact. Private rights of property, although they are the result of rules of law, or depend on rules of law applied to the construction of legal instruments, are usually considered matters of fact . . . ."

■ The State of West Virginia would appear to be in accord with the foregoing principle that a mistake of law as to the nature or extent of one's private legal rights, interests or estates is deemed such a mistake of law and fact as to render unenforceable any agreement entered into with reliance thereon. See *Beard v. Callison*, 133 W. Va. 121, 54 S.E.2d 568; *Roberts v. Crouse*, 89 W. Va. 15, 108 S.E. 421; *and Tolley v. Poteet*, 62 W. Va. 231, 57 S.E. 811.

That the "mistake" in the instant case is of such a nature is believed to be at once obvious. All parties mistakenly believed that Johnson and Metallurgical Coals had a first and prior lien against the mining machinery and equipment of J F Coal. Such is clearly a mistake as to the nature and extent of the rights and interests of Johnson and Metallurgical Coals in and to the machinery and equipment of J F Coal. Accordingly, under the foregoing authority, we hold that the mistake is of such nature as to avoid the agreement here sought to be enforced.

Plaintiff's further contention that any mistake, if such there be, related only to a legally inconsequential matter which was in nowise a material inducement to Vickers to enter into the agreement has been examined but found wanting.

To demonstrate the inapplicability of the argument, we note that the attorney for Johnson and Metallurgical Coals testified upon trial that at the meeting of the parties on September 9, 1959 he, on that occasion, made the statement that if Vickers paid Johnson and Metallurgical Coals that which was owed them by J F Coal, Vickers would then have the "benefit" of their claim

against J F Coal and also that Vickers would then "have the right to a first lien, and he'll have the right to bid on it and as much more as he wants to bid."

Furthermore, in the written memorandum of September 24, 1959 plaintiff's assignors specifically promised to "bid on the said tangible personal property owned by the J F Coal Corporation to the extent of their first lien on the said property."

In this regard, it is sufficient to note that plaintiff's assignors did *not* have a first lien on the tangible property of J F Coal; that Vickers did *not* have the "benefit" of any such first lien; and that Johnson and Metallurgical Coals did *not* bid on the tangible personal property of J F Coal to the extent of their non-existent first lien on such property. Under all these circumstances it is abundantly clear that the "mistake" in the instant case, instead of relating to an immaterial matter, relates to a matter which is most material and a very integral part of the agreement between the parties.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SUTTON concur.