WYOMING DISCOUNT CORPORATION, a
Wyoming Corporation, and Valley Finance
Company, Appellants (Defendants below),

v.

Catherine LAMAR and Newton Lamar,
Appellees (Plaintiffs below).

No. 3660.

Supreme Court of Wyoming.

Sept. 3, 1968.

W. A. Smith, of Smith & Vidakovich, Lander, for appellants.

Arnold B. Tschirgi, Lander, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Catherine Lamar and Newton Lamar, wife and husband, brought suit against Wyoming Discount Corporation and Valley Finance Company claiming defendants on the same day made a loan for $1,000 to Newton Lamar and another loan for $1,000 to Catherine Lamar, making a total of $2,000. Plaintiffs' claim is that this violated the provisions of the Wyoming Small Loan Act, §§ 13-489 and 13-490, W.S.1957, C. 1965, and that plaintiffs under the act are entitled to recover from defendants all principal and interest paid, amounting to $2,360.15.

On motion of the plaintiffs, the district court granted summary judgment against both defendants for the full amount asked, with a finding that defendants had violated the Wyoming Small Loan Act in making loans "aggregating larger than the maximum permitted at advanced rates of interest," and with a further finding that the notes and documents submitted are not subject to modification by parol evidence. The defendants have appealed.

A disposition of this case requires an interpretation of the Wyoming Small Loan Act. We are impressed with the fact that this act is peculiar in some respects and incomplete to some extent. It is unique in that the substance of the act is contained in a single section (§ 13–490) which appears to contain only definitions. This is pointed out in 1 Wyo.L.J. 132.

There is a provision for investigations by county attorneys for the purpose of discovering violations. This provision, coupled with the penalty provisions, makes it clear that violations are criminal and to be prosecuted as such. The penalty paragraph, however, after providing that every violator shall be fined not less than $100 nor more than $300, or confined in the county jail "not less than" 60 days, or both such fine and imprisonment, then states, "and in addition shall forfeit all principal and interest due or collected."

Appellants argue the penalty of being compelled to pay back all principal and interest already paid, like the other penalties provided for, could be imposed only after a criminal trial before a jury. Whether that be true or not, it is apparent the statute itself does not provide for a civil suit by the borrowers against the lenders to recover back what has been already paid.

This has caused appellants to question who receives the forfeiture referred to in the act, especially since Art. 7, § 5, Wyoming Constitution, provides that all fines and penalties under general laws of the state shall belong to the public school fund. If the legislature had provided for a civil action to recover the forfeiture mentioned in the penalty paragraph, the one-year limitation for actions upon a statute for a penalty or forfeiture would likely apply, if pleaded, unless the legislature provided another limitation. See § 1–19, W.S.1957.

A question not to be overlooked in the penalty paragraph of § 13–490 is, how long is a violator to be imprisoned? The act states not less than 60 days, but it is incomplete in that the maximum time is not stated. A question could be raised with respect to the validity of this part of the penalty paragraph in this condition of uncertainty. See State v. Gallegos, Wyo., 384 P.2d 967, 968; and Day v. Armstrong, Wyo., 362 P.2d 137, 147–148.

The unusual form and provisions of the Wyoming Small Loan Act have caused us to review the history of its enactment in the legislature. Apparently one of the drafts of the uniform small loan law had been introduced during the 1945 session of the legislature. In committee, the title was amended, all of the body of the act was stricken and in lieu of it the language of the Wyoming Small Loan Act was born. Except for one subsequent amendment in 1953, which changed the figures having to do with loan sizes and rates of interest, the law still remains as adopted in committee in 1945.

The uniform law proposed would have provided that any contract or loan made in violation of the act would be void, and the lender would have no right to collect, receive, or retain any principal, interest, or charges whatsoever. When the legislature attempted to declare a forfeiture of all principal and interest *already collected,* it failed to provide how or by whom that would be accomplished.

With respect to the length of imprisonment, the uniform law originally proposed in 1945 would have provided for imprisonment of "not more" than 30 days. The legislature changed the 30 days to 60 days but it said "not less" than 60 days.

As far as the present case is concerned, evidence offered on behalf of defendants,

in connection with plaintiffs' motion for summary judgment, tends to establish that Wyoming Discount Corporation does not have a place of business in Lander, where these loans were made; that Valley Finance Company is licensed to make loans and does make loans in Lander; that these parties have an arrangement whereby Valley Finance Company, after making loans, sells and assigns them to Wyoming Discount Corporation; and that such practice and procedure was followed with respect to the Lamar loans. It is claimed that sometimes, as was done with the Lamar loans, notes and mortgages are taken on forms of and in the name of Wyoming Discount Corporation, with the understanding and agreement that as soon as such loans are made, the instruments are to be forwarded to Wyoming Discount Corporation in Cheyenne; and if accepted, Valley Finance Company would be reimbursed for the monies loaned, and if rejected, the notes and other instruments would be assigned to Valley Finance Company.

We are not concerned at this point with how plausible this evidence may seem. Appellees attempt to discredit defendants' evidence by pointing up purported inconsistencies in the record. The question before us, however, is whether there were issues to be tried. Whether the alleged arrangement can be proved or not is a matter for ultimate trial.

■ At this point we must assume defendants' evidence to be true. Therefore we must assume, as defendants claim in their evidence, the loans to the Lamars were made solely by Valley Finance Company, with money of that company. Thus, there clearly is a genuine issue of fact as to which defendant, if either, violated provisions of § 13–490. We see, then, a genuine issue of law and fact as to which defendant can in any case be subjected to a money judgment for the forfeiture claimed.

Counsel for appellees suggests Valley Finance Company was agent for Wyoming Discount Corporation, but defendants deny

this and assert otherwise. Thus, there is an issue on that, and it cannot be resolved without a trial—or at least it cannot be resolved against the defendants without a trial.

In oral argument and three times in his brief, counsel for plaintiff-appellees admits there were two separate loans—one to Catherine Lamar for $1,000 and one to Newton Lamar for $1,000. He states specifically, "Appellees do not deny this."

It is true both borrowers signed both notes and became jointly and severally liable on both notes, but defendants claim each borrower worked and had his and her separate property and finances. Defendants claim the proceeds of the loans were disbursed separately—$1,000 to Catherine Lamar and $1,000 to Newton Lamar; that Catherine only made payments on her loan and Newton only made payments on his loan; and that in all respects the loans were treated as separate loans, and were in fact separate loans.

Also, it is asserted in the evidence that the borrowers were separated and divorced shortly after the loans were made. Defendants claim in their affidavits that each borrower was required to sign for the other partly as a guarantor and partly because household furniture, which was jointly owned, was given as security.

Section 20–22, W.S.1957, declares that the separate property of a married woman will be her sole and separate property and be owned and controlled by her as though she were sole and unmarried. That being so, we see no reason to treat the two borrowers here involved any different from any other two borrowers. There is nothing in § 13–490 which would prohibit a lender from loaning $1,000 to Jones and $1,000 to Brown, even if Brown signed as a guarantor for Jones and Jones signed as a guarantor for Brown.

If it were not for the admission of the borrowers to the contrary, we would say the joint signing of both notes and other instruments would be evidence that in truth and in fact one loan for $2,000 was made

to the parties jointly in this case, in violation of § 13-490. However, even then such evidence would not be conclusive, and defendants would still be entitled to prove at trial that in truth and in fact separate loans were made.

We have already indicated the position taken by the trial judge was that the notes and documents submitted are not subject to modification by parol evidence. We do not understand that defendants are seeking to modify or change any of the notes or documents but rather to explain what the intention of the parties was, what they did and why they executed the instruments which were executed.

■■ Courts have long recognized that a deed absolute on its face can be declared a mortgage, if the parties so intended when the instrument was delivered and accepted. See 59 C.J.S. Mortgages § 18, pp. 53–56, for an indication of how universal this rule is. In particular, on p. 55, C.J.S. refers to the settled doctrine in equity that the form of a transaction will never preclude inquiry into its real nature, but in all cases the intention of the parties must control, irrespective of the form.

■ In cases having to do with the reformation of instruments, it has often been argued that the parol evidence rule precludes any change in the written contract entered into. In Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159, 1163–1167, Chief Justice Riner pointed out that parol evidence could be admitted to show a contract to be invalid because of fraud or to be invalidated by mutual mistake.

■ In the case before us, the form of the transaction will not preclude inquiry into its real nature and the intention of the parties; and parol evidence will be admissible, if it becomes necessary, to establish the *fact* of whether defendants made any loan for more than $1,000.

Our conclusion is that there are genuine issues of fact to be tried. We have mentioned some of them. We have not answered all the questions raised with respect to the Wyoming Small Loan Act. Our not doing so is intentional. We have said enough to make it clear the summary judgment in this case must be set aside and a trial must be had.

■ Since we have indicated in previous decisions, that trial courts should, insofar as possible, make a determination of all questions of fact and questions of law which are necessary for disposition of any case, that policy should be adhered to. See Wheatland Irrigation District v. Two Bar-Muleshoe Water Company, Wyo., 431 P.2d 257, 259; and Logan v. Stannard, Wyo., 439 P.2d 24, 26.

When issues are re-examined, as we think they must be, in the light of what we have said, some questions we have referred to may be found moot and not necessary for the trial court's decision. In any event, we have decided and said enough so that issues can be expeditiously settled and tried.

Remanded for setting aside of summary judgment and for trial.