**Carl J. KUNZ, Jr., Plaintiff-Appellee,**

v.

**Harold P. WARREN, Defendant-Appellant.**

**No. 83CA1474.**

Colorado Court of Appeals, Div. II.

July 17, 1986.

Wiggins & Smith, P.C., J. Terry Wiggins, Denver, for plaintiff-appellee.

Declan J. O'Donnell, Denver, for defendant-appellant.

METZGER, Judge.

In this action to recover damages arising from the sale of real estate, defendant, Harold P. Warren, appeals the judgments entered in favor of plaintiff, Carl J. Kunz, Jr. We affirm.

The controversy at hand arose from the sale of an office building located in Arapahoe County and owned by plaintiff. Plaintiff, wishing to sell this property, contacted Cascade Marketing Company in the latter part of 1976. Cascade, through Warren, a licensed real estate broker, and Bruce Jarnagin, a licensed real estate salesman, agreed to find a purchaser for the property.

Soon thereafter, by virtue of Cascade's activities, Ronald and Karen Mathis, represented by Crown Realty Co. and its agent, salesman James Thomas, entered into a contract of sale with plaintiff. In it, plaintiff agreed to convey the office building to the Mathises in exchange for $38,000 cash, a $600,000 carry-back wrap-around mortgage, and the conveyance of 34 lots in El Campo Estates having a fair market value estimated at $203,000. Five other lots in El Campo Estates, valued at $35,000, were to be conveyed to Cascade as payment of its commission.

Plaintiff entered into another agreement, to be closed simultaneously with the above transaction, whereby he agreed to sell his interest in the 34 lots of El Campo Estates to Cascade. He received in return a one-year promissory note in the amount of $203,000, executed by Cascade and personally guaranteed by Warren and various others.

Prior to closing, and unbeknownst to plaintiff, the Mathises signed commission letters agreeing to pay commissions to Cascade and Crown in the amount of $30,000 and $11,900 respectively. In addition, without plaintiff's knowledge, Cascade entered into a "modified co-op" arrangement with Crown, whereby Cascade exchanged future net proceeds in three of its El Campo Estate lots for $11,900 of Crown's broker's commission.

Shortly after closing, plaintiff learned that El Campo Estates was not a subdivision saleable as lots, as had been represented by Ronald Mathis, Cascade, and Crown. Thereafter, the $203,000 promissory note owed to plaintiff came due, was defaulted upon, and a foreclosure proceeding was instituted. Plaintiff bid $45,000, the appraised value of El Campo Estates as agricultural land, at the foreclosure sale, and was issued a trustee's deed. This left a $158,000 deficiency on the $203,000 note.

Plaintiff then filed a complaint against Ronald and Karen Mathis, James Thomas, Crown Realty Co., Bruce Jarnagin, Harold Warren, Cascade Marketing Corporation, and the other persons who had guaranteed the $203,000 note, seeking contract and tort damages for a deficiency on the note, fraud, and breach of fiduciary duty.

After trial to the court, three separate judgments were entered. Judgment was entered against Ronald D. Mathis, James D. Thomas, Crown Realty Company, Bruce A. Jarnagin, Harold P. Warren and Cascade Marketing Corporation, jointly and severally, in the amount of $158,000 for fraud. In this judgment, the trial court also awarded $158,000 for punitive damages. A judgment was also entered against Bruce A. Jarnagin, Harold P. Warren, and Cascade Marketing Corporation, jointly and severally, in the amount of $158,000 for breach of fiduciary duty. Finally, a judgment on the note was entered against Bruce A. Jarnagin, Harold P. Warren, Cascade Marketing Corporation, Stanley D. Johnson, Manuel A. Contu, and Sam W. Houston, Jr., jointly and severally, in the amount of $266,814.03. This $266,-814.03 resulted from adding the $158,000 deficiency remaining on the $203,000 note

to the penalty interest provided by the terms of that note. The trial court also awarded attorney fees of $30,450, as provided by the terms of the note. Defendant Warren is the sole appellant. We limit our discussion to the trial court's findings which were relevant to him.

Plaintiff's first claim for relief was based on false representations that El Campo Estates was an existing subdivision, ready to be sold as lots, when in fact it was only conditionally approved, subject to installation of certain improvements.

The trial court found that Jarnagin, Cascade's salesman, falsely represented to plaintiff that El Campo Estates was an existing subdivision ready for sale as lots. Jarnagin made these representations in the presence of Warren, Cascade's licensed real estate broker, who was aware of the inaccuracy of these representations and who had an obligation to supervise Jarnagin pursuant to § 12–61–103(8), C.R.S. (1985 Repl.Vol. 5). The trial court concluded that plaintiff had justifiably relied on the above misrepresentation of material fact, as intended by Warren, and this led to its entry of the fraud judgment in the amount of $158,000, the difference between the market value of the lots as represented and their actual fair market value. The trial court further found that the fraud was attended by circumstances of malice, and was in total disregard of the rights and feelings of plaintiff, and awarded punitive damages in the amount of $158,000.

Additionally, the trial court found that Warren owed a fiduciary duty to plaintiff because he was plaintiff's agent. This duty was breached when full disclosures were not made concerning the true state of the lots, and when Cascade accepted commissions from parties involved in the transaction other than plaintiff. The trial court awarded damages for breach of fiduciary duty in the amount of $158,000 against Warren.

Third, the trial court found Warren to be one of the defendants jointly and severally liable on the past due promissory note plus

interest in the amount of $266,814.03. In addition, the trial court awarded attorney fees of $30,450 as authorized by the note.

## I.

Warren first asserts that the trial court erred when it found that the misrepresentations concerning El Campo Estates were factual in nature and, were, therefore, sufficient to support a determination of fraud. We disagree.

Any consideration of fraud must necessarily begin with the elements necessary to prove the claim for relief. In *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458, (Colo.1937), the supreme court of Colorado set forth the elements of fraud as follows:

"A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose. (3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, or the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage."

■ On the other hand, a representation of law is only an expression of opinion and cannot support an action for damages. *Chacon v. Scavo*, 145 Colo. 222, 358 P.2d 614 (1960); *Two, Inc. v. Gilmore*, 679 P.2d 116 (Colo.App.1984).

Warren argues that the holding in *Chacon v. Scavo, supra*, controls. In that case, the court held that representations

made concerning whether certain lots were usable as building sites required an interpretation of the pertinent city ordinances and were, therefore, representations of law. In our view, *Chacon* is distinguishable on its facts from the situation here.

■ The representation by Warren and Jarnagin, that the lots were ready to be sold as building sites, was not based on an interpretation of the applicability of existing zoning law. Rather, that representation concerned the subdivision's existing status, and was made in the face of their knowledge that the El Campo Estates subdivision had only been conditionally approved by the pertinent zoning authority. This constituted a misrepresentation of fact, not requiring a legal opinion such as might be required to determine the adequacy of a legal filing in the county land records, or the applicability of a city ordinance restricting land use. *Cf. Chacon v. Scavo, supra; Metzger v. Baker*, 93 Colo. 165, 24 P.2d 748 (1933).

The record supports the trial court's finding that Warren and Jarnagin were representing as accomplished facts that the El Campo Estate subdivision filing had been approved and recorded, and that the lots were ready for sale. Accordingly, we agree with the trial court's determination that the misrepresentations concerning El Campo Estates were factual in nature and, therefore, supported a finding of fraud.

## II.

Warren next contends that the trial court erred when it found he had breached his fiduciary duty to plaintiff, first by failing to disclose the true status of El Campo Estates, and second by failing to disclose commissions paid by Crown to Cascade in exchange for part of Cascade's interest in El Campo Estates. We disagree with these arguments.

■ A real estate agent owes a fiduciary duty to his principal to act with the utmost good faith and loyalty. *McKinney v. Christmas*, 143 Colo. 361, 353 P.2d 373 (1960). In order to discharge this duty, an agent must disclose all facts relative to the subject matter of his agency which might reasonably affect the decisions of his principal. *Wheeler v. Carl Rabe, Inc.*, 198 Colo. 311, 599 P.2d 902 (1979).

■ Warren's first argument is that he owed no duty to give plaintiff a legal opinion concerning the status of the El Campo Estates subdivision, since the giving of such an opinion would constitute the unauthorized practice of law. Our reasoning in Part I is dispositive of this contention, and we conclude that Warren owed a duty to represent correctly the existing facts concerning the status of El Campo Estates.

Warren next argues that his acceptance of secret commissions was "customary" and the amount received minimal; thus, he contends, those circumstances could not form the basis for a finding of breach of fiduciary duty. We disagree.

■ The record supports the trial court's finding that Warren accepted commissions both from plaintiff, his principal, and from others involved in the transaction. It also supports the trial court's finding that this fact was not disclosed to plaintiff. Furthermore, plaintiff testified he "would not have gone through with the deal" if he had known Cascade was going to receive any cash. He was relying on Cascade's exposure to the risk associated with El Campo Estates to insure that the representations made to him were correct. Under these circumstances, we refuse to disturb the trial court's finding that Warren breached his fiduciary duty to plaintiff.

## III.

■ Warren also asserts that plaintiff's bid at the foreclosure sale was "shockingly and unconscionably below the fair market value of the property" and should be set aside under the rule set forth in *Chew v.*

*Acacia Mutual Life Insurance Co.,* 165 Colo. 43, 437 P.2d 339 (1968). We disagree.

The record shows that plaintiff bid $45,-000, the appraised value of the property, and was later able to sell the property, in an arms-length transaction, for only $38,-000, well below the price paid at the foreclosure sale. Therefore, the price bid was not unconscionably low, and we decline to reverse the trial court's award for deficiency on the note.

Warren's contention, that the court erred in not ordering election of remedies prior to entry of judgment, is without merit.

Affirmed.

PIERCE and STERNBERG, JJ., concur.