**BOYLES BROTHERS DRILLING COMPANY, a Utah corporation, Plaintiff–Appellee,**

v.

**ORION INDUSTRIES, LTD., a Colorado corporation, Defendant–Appellant.**

No. 85CA1259.

Colorado Court of Appeals, Div. II.

Aug. 18, 1988.

John E. Myles, Englewood, for plaintiff-appellee.

Hart & Trinen (on the briefs), Donald T. Trinen, Theodore W. Brin, Denver, Downey & Murray, P.C., Thomas E. Downey, Jr., Theodore W. Brin, Englewood, for defendant-appellant.

KELLY, Chief Judge.

This appeal arises out of an action to collect on a promissory note. Defendant, Orion Industries, Ltd., argues that the trial court erred in entering summary judgment for plaintiff, Boyles Brothers Drilling Company, and in dismissing Orion's counterclaim for reformation of the indorsement. The trial court ruled that, because the written indorsement did not specify it was to be "without recourse" and any alleged disclaimer of Orion's liability could not be proved by parol evidence, there existed no genuine issues of fact concerning Orion's liability; thus, Boyles was entitled to judgment as a matter of law. We conclude that the trial court erred in applying the parol evidence rule to the circumstances here, and therefore, we reverse.

In satisfaction of a $71,400 debt, Orion indorsed to the order of Boyles a promissory note, which Orion had received from a third party, having a face value and princi-

pal balance of approximately $87,300. Contemporaneously, Orion executed an "Assignment of Promissory Note and Security Interest" which was attached to the note. The assignment stated, in part, that the assignments therein (of the note and a pledge agreement in certain stocks) were "in full and complete satisfaction of all claims" Boyles had against Orion on the underlying debt.

When the makers of the note defaulted, Boyles sued Orion as the indorser. Orion's answer included the affirmative defenses of mistake and fraudulent or negligent misrepresentation. In its counterclaim based on fraud in the inducement, Orion sought reformation of the contract of indorsement to reflect what Orion alleged was the agreement of the parties that assignment of the note was to be without recourse.

Boyles moved for summary judgment. It admitted that, pursuant to § 4–3–119(1), C.R.S., the assignment, as an allonge to the note, must be construed together with the indorsement. It argued, however, that nothing in the assignment operated as a disclaimer of liability on the indorsement, and that any such disclaimer could not be proved by parol evidence. *See* § 4–3–414(1), C.R.S. (including Official Comment 1).

Orion's memorandum in opposition to summary judgment was accompanied by two affidavits of its officers which alleged that the attorney and agent for Boyles, Timothy J. Flynn, had represented to Orion that the assignment, which he had drafted, would relieve Orion from "any future liability" to Boyles. Orion argued, in effect, that Flynn induced Orion to execute the indorsement and assignment by fraudulently or negligently misrepresenting that the words "in full and complete satisfaction of all claims" had the same legal effect as the words "without recourse." The affidavit of Orion's president stated:

"[Flynn] assured me ... that from that time on, Boyles would look exclusively to the maker ... and not to Orion.... Based on these affirmative representations, and the negotiations throughout ... it was my understanding that the

Assignment terminated all of Orion's ... liability to Boyles and Boyles was assuming the risks of collection.... I would not have executed the Assignment on behalf of Orion had I known or understood that the Assignment could be interpreted to be with recourse or that Orion ... would be held liable on the Note if the makers defaulted."

Citing § 4–3–414(1), C.R.S., the trial court concluded that parol evidence to this effect would not be admissible at trial to prove Orion's disclaimer of liability or to reform the indorsement to read "without recourse." Accordingly, the trial court ruled that there existed no genuine issues of fact concerning Orion's liability, entered judgment in favor of Boyles on its complaint, and dismissed Orion's counterclaim for reformation.

Orion contends that parol evidence is admissible to show that execution of a contract was procured by fraud or mistake. Further, Orion argues that the facts alleged in its affidavits give rise to a legally cognizable fraud or mistake defense to liability on the contract of indorsement for which reformation is an appropriate remedy. We agree.

The official comment to § 4–3–414, C.R.S., relied upon by the trial court, states:

"An indorser may disclaim his liability on the contract of indorsement, but only if the indorsement itself so specifies. Since the disclaimer varies the written contract of indorsement, the disclaimer itself must be written on the indorsement and cannot be proved by parol. The customary manner of disclaiming the indorser's liability under this section is to indorse 'without recourse'."

We conclude, however, that this comment states only the general rule. There are exceptions.

■■■ As between the immediate parties, a negotiable instrument or an indorsement thereof is merely a contract. *See* § 4–3–119, C.R.S. (including Official Comment 3). While parol evidence is not admissible to vary or contradict the terms of a promissory note or a blank indorsement of

the note, *Interstate Trust Co. v. U.S. National Bank*, 67 Colo. 6, 185 P. 260 (1919); *Metro National Bank v. Roe*, 675 P.2d 331 (Colo.App.1983), nevertheless, parol evidence of a contemporaneous oral agreement or transaction may be admissible if its effect is to prove a defense to payment of the instrument according to its terms. *McCaffrey v. Mitchell*, 98 Colo. 467, 56 P.2d 926 (1936); *Metro National Bank v. Roe, supra.* Thus, in an action to reform an instrument that does not reflect the intent of the parties because of fraud or mistake, parol evidence is admissible. *Chilson v. Reed*, 154 Colo. 149, 389 P.2d 87 (1964); *St. Regis Paper Co. v. Wicklund*, 93 Wash.2d 497, 610 P.2d 903 (1980); *Wyoming Discount Corp. v. Lamar*, 444 P.2d 620 (Wyo.1968).

Indeed, the official comment to § 4–3–118, C.R.S., states that the rules of construction "preclude a resort to parol evidence for any purpose *except* reformation of the instrument." (emphasis added) Moreover, unless explicitly displaced by the particular provisions of the U.C.C., all supplemental bodies of law, including the principles of fraud, misrepresentation, and mistake, apply to commercial contracts. Section 4–1–103, C.R.S. The traditional exception to the parol evidence rule applies when the "evidence is offered to establish fraud or mutual mistake or mistake of law." *Light v. Rogers*, 125 Colo. 209, 242 P.2d 234 (1952); *see Martin v. Cole*, 3 Colo. 113 (1876); *Johnson v. Cummings*, 12 Colo. App. 17, 55 P. 269 (1898).

The U.C.C. does not eliminate, it expressly acknowledges, the equitable remedy of reformation. *See* § 4–3–118, C.R.S. (including Official Comment 1). Orion seeks to establish that execution of the contract of indorsement was induced by the fraudulent or negligent misrepresentations of the indorsee, thus warranting reformation. To this end, parol evidence is admissible.

Boyles argues that, in any event, the facts alleged by Orion constitute a mistake of law only, and that a mistake of law does not afford the basis for reformation. We disagree with this interpretation of the facts alleged.

Reformation is an appropriate remedy when the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. *Atchison v. Englewood*, 193 Colo. 367, 568 P.2d 13 (1977). Thus, reformation is generally permitted when it is found that the parties have made a mutual mistake, or that there has been a mistake by one of the parties and fraud or inequitable conduct on the part of the other. *Mike Occhiato Mercantile Co. v. Allemannia Fire Insurance Co.*, 98 F.Supp. 888 (D.Colo.1951); *Johnson v. First National Bank*, 24 Colo.App. 23, 131 P. 284 (1913); *accord Kimberly, Inc. v. Hays*, 88 N.M. 140, 537 P.2d 1402 (1975).

A representation of law, however, is only an expression of opinion on which the party to whom it is made has no right to rely. *Chacon v. Scavo*, 145 Colo. 222, 358 P.2d 614 (1960); *Kunz v. Warren*, 725 P.2d 794 (Colo.App.1986). Therefore, a mistake of law induced by the other party's misrepresentation is ordinarily not a ground for relief. *Ryan v. Vickers*, 158 Colo. 274, 406 P.2d 794 (1965). This rule is typically applied in cases in which the alleged misrepresentation was as to the existence or effect of an ordinance or statute. *See, e.g., Metzger v. Baker*, 93 Colo. 165, 24 P.2d 748 (1933).

Naturally, there are also exceptions to this general rule:

"Mistake as to particular private rights may be treated as a mistake of fact, or as a mixed mistake of law and fact. Private rights, ... although they are the result of rules of law, *or depend on rules of law applied to the construction of legal instruments*, are usually considered matters of fact."

*Ryan v. Vickers, supra* (emphasis added); *see also Atchison v. Englewood, supra* (mistake as to private rights); *Metzger v. Baker, supra* (noting exceptions for representations by one with special knowledge, in a fiduciary relationship, or as to laws of foreign states).

■ Moreover, any strict distinction that may have existed between "mistake of fact" and "mistake of law" has been eroded in recent years in a number of jurisdictions. *See* 13 S. Williston, *Contracts* § 1583 (W. Jaeger 3rd ed. 1970); *see also* D. Dobbs, *Remedies* § 11.8 (1973) (mistake as to private rights or as to legal effect of an instrument may be treated as mistake of fact justifying relief). Thus, even though there is no misapprehension as to what words have been used in a contract, mistake as to the legal effect of those words, or of the absence of them, is subject to reformation by the court. *Haslem v. Ottosen*, 689 P.2d 27 (Utah 1984); 13 S. Williston, *supra*, § 1585; *accord Pasotex Petroleum Co. v. Cameron*, 283 F.2d 63 (10th Cir.1960) (granting reformation for mistake as to assignment of lease without reservation of certain lands, which by operation of law and contrary to intent of parties passed with legal description); *Papke v. Pearson*, 203 Minn. 130, 280 N.W. 183 (1938) (reformation granted where words used in deed did not express meaning parties intended and there was a mistake as to their legal effect); *State v. Schwabe*, 335 S.W.2d 15 (Mo.1960) (reformation granted where parties were mistaken as to legal effect of failure to include reservation of easement in deed); *Ray v. Ricketts*, 235 Or. 243, 383 P.2d 52 (1963) (granting reformation of blank indorsements on demand notes to read "without recourse" where indorsers, acting under direction of plaintiff's attorney, believed assignment was without recourse).

■ The alleged misrepresentation here was as to the legal effect of words used in the indorsement and assignment. It was made by an attorney to a layman and goes to the very essence of the agreement between the parties. A statement as to the legal effect of a document may, in some cases, constitute a false representation if it is intentionally false, or is made with reckless disregard for its truth or falsity, and the declarant has special or superior knowledge about the law and such knowledge is not reasonably available to the person to whom the statement is made. *See CJI–Civ. 2d* 19:14 (1980); *see also Pattridge v.*

*Youmans,* 107 Colo. 122, 109 P.2d 646 (1941). Whether, as Boyles claims, Orion was represented by an attorney "who read and approved every document" is another question of fact which reflects on the element of reasonable reliance.

■ There being allegations of facts which, if proved, would support reformation, and parol evidence being admissible under the U.C.C. to establish these facts, the trial court erred in entering summary judgment. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Bailey v. Clausen*, 192 Colo. 297, 557 P.2d 1207 (1976); C.R.C.P. 56(c). When there are controverted factual issues, they must be resolved at trial. *Kaiser Foundation Health Plan v. Sharp*, 741 P.2d 714 (Colo. 1987); *see also Mt. Emmons Mining Co. v. Crested Butte*, 690 P.2d 231 (Colo.1984).

Accordingly, the judgment is reversed, and the cause is remanded with directions to vacate the judgment for Boyles, to reinstate the complaint and the counterclaim, and to conduct further proceedings as needed.

VAN CISE, J., concurs.

SMITH, J., dissents.

SMITH, Judge, dissenting.

I respectfully dissent.

Because I view this case as one involving negotiable instruments law rather than general contract law, I reach a different conclusion than the majority. The law relating to commercial paper, or negotiable instruments, had its genesis in the "Law Merchant" of ancient England, while contract law was a creature of the common law from its inception. Although the common law ultimately embraced negotiable instruments law, the rules concerning commercial paper have, nevertheless, continued to evolve separately from the common law rules relating to contracts generally.

It is true that, in a general sense, negotiable instruments are contracts, and yet, the rules governing their execution, transfer or indorsement, demand, effect, payment, liability, etc. are substantially different than those applied in general contract law. The ready transferability and uniformity of interpretation of commercial paper having been determined to be necessary in a commercial society, rather rigid and detailed rules have evolved and have almost universally been made the subject of statutory enactment. To this end, in 1896, "The Uniform Negotiable Instruments Act" was promulgated and adopted in all states. The current "Uniform Commercial Code" (UCC) extant in Colorado as Title 4 of the Colorado Revised Statutes represents the current state of its evolution. Article 3 of that title governs "Commercial Paper."

In the instant case, the holder of a promissory note sought, upon dishonor by the maker, to enforce the statutory liability of an indorser. The indorser had agreed, pursuant to § 4–3–414(1) C.R.S., to accept such liability by not including in his indorsement words of disclaimer, such as "without recourse."

> Section 4–3–414(1) provides as follows: "Unless the indorsement otherwise specifies (as by such words as 'without recourse'), every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so."

The official comment relative to this section recites the virtually universal rule that the courts have applied in their interpretation of the section. It reads, *inter alia:*

> "1. Subsection (1) states the contract of indorsement—that if the instrument is dishonored and any protest or notice of dishonor which may be necessary under Section 3–501 is given, the indorser will pay the instrument. The indorser's engagement runs to any holder (whether or not for value) and to any indorser subse-

quent to him who has taken the instrument up. An indorser may disclaim his liability on the contract of indorsement, but only if the indorsement itself so specifies. *Since the disclaimer varies the written contract of indorsement, the disclaimer itself must be written on the instrument and cannot be proved by parol.* The customary manner of disclaiming the indorser's liability under this section is to indorse "without recourse." *Apart from such a disclaimer all indorsers incur this liability, without regard to whether or not the indorser transferred the instrument for value or received consideration for his indorsement."* (emphasis supplied)

Thus, upon proof of the note, dishonor, and an indorsement without disclaimer, no part of which is disputed here, the indorser is liable as a matter of law and summary judgment in favor of the holder is proper. No asserted fact issues will preclude summary judgment unless their resolution in favor of the indorser will preclude his liability as an indorser.

The majority in its skillfully reasoned and persuasively argued opinion has, in my view, announced a rule that would permit any indorser to escape the indorser's liability under the statute if he is able to establish that when he indorsed the promissory note, without words of disclaimer, it was in the belief that such disclaimer was not necessary. The implications of such a rule, as applied to commercial paper and its transferability are not only far reaching, but would substantially change the manner in which commercial paper is now used.

No matter how such belief as to the effect of an indorsement happens to come about, it is mistaken. The law in this regard is specific. *See* § 4–3–414(1), C.R.S.

The mistake as to the legal effect of an indorsement, without disclaimer, is a mistake of law. A mistaken belief as to the law is not generally a defense to liability. It may, however, if fraudulently or negligently induced, provide the basis for a separate action in tort to recover damages for fraud or negligence. However, mere misrepresentations of law, whether negligent

or fraudulent, even though relied upon, are not, by themselves, actionable. *Kunz v. Warren*, 725 P.2d 794 (Colo.App.1986).

To escape this problem, the indorser has argued for reformation, asking the court, in the exercise of its equitable powers, to add the words "without recourse" to the indorsement in order to relieve indorser from liability. In this regard, the majority, at least by implication, seems to indicate that reformation is an encouraged means of making commercial paper conform to the parties' intent.

I read the statutory article relating to commercial paper as much more restrictive.

Repeatedly throughout Article 3 of the UCC there are references to precluding parol evidence to ascertain the intent of parties, or to vary terms of negotiable instruments. *See, e.g.,* § 4–3–414, C.R.S. (including Official Comment). Even § 4–3–118, C.R.S., and the comment appended thereto, which the majority cites for its position, is a section which deals solely with common patent ambiguities found in commercial paper and sets out presumptive rules of interpretation. The statutory language does not mention reformation; however, Official Comment 1 to that section does. Its language is instructive as to the general philosophy of the Code:

> "1 The purpose of this section is to protect holders and to encourage the free circulation of negotiable paper by stating rules of law which will preclude a resort to parol evidence for any purpose except reformation of the instrument. Except as to reformation these rules [of interpretation] cannot be varied by any proof that any party intended to the contrary."

Each of the six rules of interpretation listed in the section deals with obvious mistakes or inconsistencies in language. Such mistakes are patently mutual and are an appropriate subject for reformation. However, reformation to alter the basic effect of an indorsement and to bring it into compliance with the intent of one party is, in my opinion, something entirely different. The indorsement in question is not ambiguous; rather, its meaning and its legal effect are crystal clear under the statute.

Even if it is assumed, arguendo, that reformation of an unqualified indorsement is possible under the UCC, the only bases for reformation would be (1) mutual mistake, or (2) unilateral mistake, if fraudulently induced. *Mike Occhiato Merchantile Co. v. Allemannia Fire Insurance Co.*, 98 F.Supp. 888 (D.Colo.1951). A mistake of law, such as is present here, however, affords no ground for reformation. *Edwards v. Edwards*, 113 Colo. 390, 157 P.2d 616 (1945). Thus, reformation for mistake, either mutual or, as argued here, unilateral and induced by fraud, is appropriate only where the mistake is one of fact.

The only factual issues indorser raises relate to whether Boyles' attorneys represented that the effect of the indorsement would be "without recourse" and whether indorser relied, or was entitled to rely, on such representations. Therefore, reformation, in my opinion, was not an available remedy.

The pleadings and arguments indicate that both parties were represented by counsel who drafted the instruments, and the indorsement was executed by Orion upon the advice of its counsel. The indorsers' remedy, if any, may therefore lie in a separate action for damages. In any event, the legal effect of not including the words "without recourse" in the indorsement was presumed to be known by Orion when its officers executed the same.

Thus, although the majority may be correct in saying that factual issues exist, the resolution of such issues, whether for or against indorser will not affect its liability arising by virtue of the indorsement. The trial court was therefore, in my view, correct in entering summary judgment.

I would affirm.