No. 16,526.

Light et al. *v.* Rogers.
(242 P. [2d] 234)

Decided February 18, 1952.   Rehearing denied March 17, 1952.

Mr. Sidney S. Jacobs, Messrs. Creamer & Creamer, for plaintiffs in error.

Messrs. Rogers & Winner, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

RANGER ROGERS, to whom we will refer as plaintiff, instituted an action against Albert A. Light and Sarah T. Light, hereinafter designated as defendants, to recover damages for breach of contract for the sale of certain real estate, and on trial before the court recovered a judgment in the sum of $1800.00, to review which defendants bring the case here by writ of error.

The undisputed evidence discloses that the parties hereto entered into a written contract for the sale of certain real estate. The contract provided, inter alia, that defendants should furnish an abstract of title, and, if the title was acceptable, convey the property by warranty deed. The following provision was set out in the contract: "This bid, including all conditions appearing hereon, is absolutely conditioned upon a report by the Colorado State laboratory that the domestic water used on the property is 'safe.' Seller represents that the well is over 600 feet deep and in good condition. Above deposit is to be returned immediately if water 'unsafe.'" The well water was tested and found to be safe for domestic purposes.

The deed to the property was executed and delivered and the purchase price paid on a date not disclosed by the record; however, the next day plaintiff executed and delivered to defendants, upon payment to him of the sum of $150.00, a letter of which the following paragraph only is necessary for our consideration: "This letter will further evidence the fact that in consideration of your giving me the sum of $150.00, *I agree to accept the well* and the well water in its present condition on the above described property, which I have this day purchased from you." (Italics ours.)

The contract was dated May 29, 1946; the deed was executed and delivered the latter part of June, 1946; the letter to which the parties hereto refer as a release, and from which the paragraph hereinbefore is quoted, was dated June 29, 1946; the complaint was filed September

9, 1949; trial was had December 23, 1949; and judgment entered on March 6, 1950.

Plaintiff entered into possession of the demised premises in June, 1946, and in the latter part of May, 1947, made replacements and repairs in the well.

When the trial began, a question was propounded to plaintiff on direct examination, to which defendants interposed an objection, whereupon the court ruled:

*"As we stated in the pretrial conference which we have just concluded, and wherein we entered certain stipulations* [no order reciting the action taken at the pretrial conference or the stipulations entered into thereat appear in the record as provided by rule 16, R.C.P. Colo.], we are running into a matter of law here upon which there might be a serious controversy. The Court is going to hear the testimony that the parties have to offer, after which the parties will be given an opportunity to file briefs so that the Court may take its time and try to determine those matters correctly. So I am going to overrule your objection, Mr. Jacobs, *with out attempting to be right or wrong on it.* If I am wrong I can correct it in my decision. That will be the way I am going to hear the testimony that is offered and it is understood each party may have an objection to all testimony.

\* \* \*

"The Court will have to decide after reading the briefs that you gentlemen submit whether or not this testimony was inadmissible. If it is irrelevant and shouldn't have been put in and has no bearing it wouldn't even have to be stricken. But I thought so long as the parties and witnesses are here, instead of attempting to exclude something that the Supreme Court might say should have been admitted, and have to do it all over again, I would hear all the testimony. It is understood that each of you object to any testimony which you find objectionable without further objection." (Italics ours.)

Plaintiff was permitted to testify that the evening be-

fore the "closing of the deal" he had a conversation with defendants in which he stated that according to his examination and that of his consulting engineers it would be necessary for him to replace the pump and casing in the well on the premises in order to use the same, and he then stated that this change in the "mechanism of the pump and well" to make it safe and usable would necessitate an expenditure of about $500.00. He suggested that defendants pay $200.00 toward that expense. At the conclusion of this conversation he testified that defendants agreed to, and did, deliver their check for $150.00 which was acceptable to him and was the sum for which the release was executed.

The next day, after he had paid defendants $18,000.00 for the property, he, in his office, dictated, signed and delivered the release to defendants. Plaintiff also testified that about a week after May 29, 1946, he had a conversation with defendant Mr. Light, and was told that he had never measured the depth of the well. The following question was propounded to plaintiff by his counsel: "When the release was executed [the letter hereinabove set forth], did you intend to waive the representation that the well was 600 feet deep?" to which he answered, "No, sir."

Plaintiff further testified that he made one or two examinations of the equipment in the well pit and found the tank and pump were old, and dirty water was on the floor of the pit; he had discussed the cost of a complete new well to the 600 foot level with several persons, and that it would cost $3000.00, and, although no measurement was made by him personally, the well was only 343 feet deep; that the casing therein would have to be replaced and it did not extend to the bottom thereof. He also testified that in the conversation with defendants on the evening before the release was executed no mention whatever was made respecting the depth of the well, and plaintiff's wife, then being present, testified

that she heard no conversation between plaintiff and defendants with reference to its depth.

In the latter part of May, 1947, plaintiff employed a well driller and pump repair man to replace the pump and do other repair work in the well pit. This man testified that he measured the depth of the well by inserting a drill and a tape therein and found at the depth of 343 feet there was an iron obstruction which prevented the drill from going beyond that point. He gave it as his opinion that the iron obstruction had been dropped into the well and had reached the bottom although he admitted that there was a possibility of a greater depth and that he knew nothing of the depth of the well in June, 1946. He further testified that his examination indicated that the casing in the well was probably perforated at a depth of 135 feet, and based his opinion upon the fact that the well could not be pumped below that point. This witness on redirect examination, after stating that the depth of the well was 343 feet in May, 1947, was asked, "In your opinion how long had the well been of that depth?" His answer was, "For several years, I would say."

One of plaintiff's consulting engineers testified that prior to June 29, 1946, he had taken a sample of water from another well which he stated was *600 feet deep,* and in the proximity of plaintiff's well, and found the hardness of that water to be "10.5 grains of hardness per gallon" while the sample from plaintiff's well disclosed "14.6 grains of hardness per gallon," and from these analyses he gave his opinion that the water in plaintiff's well was coming from a shallower strata than that in the other well, and he advised plaintiff concerning this opinion. He further testified that even though plaintiff's well was 600 feet deep, nevertheless, if a broken casing was present, the hardness of the water in the well could thus be accounted for, and further that his information as to the depth of the well other than plaintiff's from which a sample had been taken, was based

upon information given him; *he had never measured that well.*

At the conclusion of plaintiff's evidence, defendant moved for a dismissal "upon the ground that the plaintiff has failed to prove a case upon which he is entitled to recover." This motion was denied.

It will be remembered that the court declined to pass upon objections interposed by counsel, stating, as hereinbefore set out, that "It is understood that each of you object to any testimony which you find objectionable without further objection." Consequently, after defendants' motion for dismissal had been denied, defendants called witnesses whose testimony, in many respects, was a denial of evidence offered by plaintiff. However, our disposition of the case obviates the necessity for setting forth the testimony.

The court, consistent with the statement made in connection with the first objection presented by defendants' counsel, thereafter made no ruling whatever indicating what evidence was considered relevant, competent or material and what was hearsay, but permitted the introduction of all evidence offered by either party. What evidence the court considered competent, relevant and material and what was considered hearsay, so far as the record here discloses, remains a mystery to us and to counsel. The provisions of rule 52 C (a) R.C.P. Colo., concerning court findings, were wholly disregarded. The court did not "find the facts and state its conclusions of law thereon."

Plaintiffs in error have set out fourteen specifications of points. The only ones which we consider it necessary to determine are those relating to the admission of plaintiff's oral testimony relating to the negotiations preceding, and in connection with, the execution of the release dated June 29, 1946, and in connection with the meaning and interpretation of the word "well" as the same is used therein.

It will be recalled that plaintiff testified that when he

executed the release he intended by the use of the word "well" to mean only the "mechanism of the pump and well" and did not intend thereby to release defendants from their obligation to deliver him a well "over 600 feet deep."

■ The word "well" is defined as:

"A pit or hole sunk into the earth to such a depth as to reach a supply of water, generally of a cylindrical form, and often walled with stone, bricks, tubbing, etc. to prevent the earth from caving in." Webster's New International Dictionary, 1951.

"The word 'well', as a general term of description in a deed, designates the portion of land under and occupied by the excavation and its surrounding retaining walls, and by any structures or appliances built upon the land to facilitate its use, and also the water actually at any time in the excavation." (citing cases) *Davis v. Spaulding*, 157 Mass. 431, 32 N.E. 650.

"A well, in the sense in which the term is here used, may be defined as an excavation or hole dug, bored, or drilled into the earth for the purpose of obtaining water from subterranean sources. The term 'well' ordinarily includes, as appurtenant thereto, so much of the land upon which it is located as is necessary for its use and operation, and the fixtures and appliances used in connection therewith. The term may also include the water in the well." 56 Am. Jur., p. 616, §138.

The quoted portion of the release is as plain, clear, definitive and unambiguous as the English language permits. It needs no construction. We have been unable to find, and no decision or definition has been called to our attention, justifying us in holding that the word "well" used in the release is restricted to "the mechanism of the pump and well" separate, apart and independent of the hole or pit from which water is produced.

■ Having concluded that the release here under consideration was plain, clear, definitive and unambiguous, parol evidence as to the intention, purpose or

import of the plaintiff in executing and delivering the same was wholly inadmissible and constituted a direct violation of all rules with reference to the admissibility of parol evidence. There is an exception to the general rule where evidence is offered to establish fraud or mutual mistake or mistake of law. However, there is here neither allegation nor proof of fraud, mutual mistake of fact or mistake of law. We said in *Oriental Refining Company v. Hallenbeck*, 125 Colo. 76, 240 P. (2d) 913, announced January 21, 1952, "It is an elementary rule of law, requiring no citation of authority, that, aside from specific exceptions with none of which we are here concerned, parol evidence will not be permitted to modify, add to, contradict or change the provisions of a written instrument unless such contract [instrument] be ambiguous within itself."

The trial court should have granted defendants' motion to dismiss, and for its failure to do so, the judgment is reversed and the cause remanded with instructions to dismiss.