No. 19,089.

MAX L. CAMPBELL, ET AL. *v.* E. C. GRAHAM, AS BELMONT ELECTRIC SERVICE.

(357 P. [2d] 366)

Decided December 5, 1960.    Rehearing denied December 23, 1960.

Messrs. CHUTKOW AND ATLER, Mr. EDWARD I. HALIG-MAN, for plaintiffs in error.

Mr. WALTER F. SCHERER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE defendant in error instituted this action against Max L. and Leona J. Campbell, The International Trust Company, and the Public Trustee, seeking a money judgment and a decree of foreclosure of a mechanic's lien against property of the Campbells. The defendants thereupon filed a third party complaint against the Arapahoe Building Company alleging that it was liable for any indebtedness which the defendants owed to the plaintiff.

The Arapahoe Building Company originally agreed with the General Electric Company to have a building constructed on its property. One Carl Meyer was em-

ployed as general contractor to build it. Meyer was required to pay all bills for labor, material and incidentals and was also required to pay the subcontractors. Pursuant to his general contract, Meyer entered into a subcontract with E. C. Graham, doing business as Belmont Electric Company, on June 14, 1957, whereby Graham undertook to perform the electric wiring in connection with the construction. This latter contract called for the payment of $5,877.00 for work to be performed by Graham in accordance with the plans and specifications. On September 24, 1957, at a time when the building was substantially completed, the Arapahoe Building Company conveyed the property to the Campbells, who in turn executed a Deed of Trust to The International Trust Company to secure the payment of a loan in the amount of $35,000.

On December 26, 1957, Graham filed a mechanic's lien reflecting the work, labor and material which he had furnished in the construction of the building. This was properly recorded and Van Schaack & Company was named as reputed owner. This lien statement claimed $6,937.00. The difference between this figure and the contract price resulted from an extra item of $699.00 for the installation of a Smithcraft ceiling.

It appeared from the evidence that in October of 1957 the plaintiff had executed in blank a mechanic's lien release and delivered it to the general contractor, who in turn had it filled in and delivered it to a representative of the Arapahoe Building Company. There is other evidence which shows that Graham told a representative of the Arapahoe Building Company that "everything is taken care of now." The full contract price was paid to Meyer by Arapahoe Building Company.

At the time in question Graham was operating as an individual proprietorship. He called his business the Belmont Electric Service. He had not, however, filed a trade name affidavit as required by C.R.S. '53, 141-2-1, et seq., when this action was filed in the district court on

May 15, 1958. It was not until December of 1958, after the defense of the statute of limitation had been raised, that he complied. The defendants saved their record with respect to this objection and the matter proceeded to trial. Subsequent motions by defendants to abate the action and to dismiss on the same ground were denied, and finally judgment was entered in favor of Graham and against the defendants.

In seeking reversal, defendants argue that it was error:

*First,* for the court to refuse to dismiss the action for the reason that it was barred by the six months statute of limitation applicable to the remedy of a lien for foreclosure;

*Secondly,* it is said that the court was in error in its refusal to hold that the lien statement was insufficient for failure to name the real owners and to describe the property.

*Thirdly,* it is contended that the execution by the plaintiff of a mechanic's lien release operated to estop him from taking the opposite position by filing a suit and prosecuting the same.

*Fourth,* other errors pertaining to admission of testimony and exhibits are urged.

I.

Section 141-2-2, supra, provides a penalty for failure to file a trade name affidavit. It declares that said person, partnership or association, "shall not be permitted to prosecute any suit for the collection of the debts until such affidavit shall be filed." C.R.S. '53, 86-3-10, provides that "an action shall have been commenced within that time to enforce the same." The time referred to is six months after the last work or labor is performed or material furnished or after the completion of the building.

The plaintiff's testimony was to the effect that the work was finally completed by him on December 12, 1957. Defendants contend that the work was substan-

tially completed on October 1, 1957, with the exception of the Smithcraft ceiling, and that this is the date from which the statute should run since on October 1 there was substantial completion. They say that the action would have to have been started no later than June 13, 1958, in order to escape the bar of 86-3-10, supra. Therefore, the issue is whether the institution of the action on May 15, 1958, prior to the trade name filing, served to toll the statute.

The penalty set up in 141-2-2, supra, prohibits one who has not complied from prosecuting suits until there has been a proper filing. Does this mean that an attempted filing of an action is a nullity and that it must be reinstituted after the affidavit has been filed?

The case relied on by defendants, *Western Electric Co. v. Pickett,* 51 Colo. 415, 118 Pac. 988, arose under an analogous statute pertaining to foreign corporations doing business in Colorado without complying with the requirements of the statute. That statutory provision prohibits the doing of business, the exercising of corporate powers, holding real property, as well as prosecuting or defending suits prior to the payment of license fees. The object and purpose of the statute which was construed by the Court in *Western Electric* is quite different from the trade name statute. The corporation statute actually makes all acts of the corporation without compliance with the local statute void. On such a premise, the holding in *Western Electric* that the filing of an action was a nullity is logical. The similar language employed in the statute at bar prohibiting the "prosecution [of] any suits for the collection of their debts" has been held to merely abate the action. *Rocky Mountain Seed Co. v. McArthur,* 85 Colo. 1, 272 Pac. 1117; *Wallace Plumbing Co. v. Dillon,* 71 Colo. 224, 205 Pac. 950; *Michard v. Myron Stratton Home,* 144 Colo. 251, 355 P. (2d) 1078. In the recently decided *Michard* case, the trade name problem was clearly recognized as in abatement and not as in bar. It was there said that the failure

to file the correct trade name affidavit can be solved by mere corrective action on the part of the plaintiff.

Acceptance of the defendants' argument would require a holding different from the above decisions. We would have to say that trade name filing is a jurisdictional prerequisite to the filing of a lawsuit. No such intent appears in Sec. 141-2-2, supra, and we are not disposed to attribute such meaning to it. We therefore hold that the action filed in May of 1958 was in apt time and that when failure to comply with the trade name statute appeared, an abatement of the action occurred. Subsequently when the affidavit was filed this disability was removed and plaintiff was free to prosecute the action as originally filed. It follows that the six months statute did not operate and the claim was not barred.

## II.

The failure to name the true owner does not void the lien statement. The statute, C.R.S. '53, 86-3-9, declares that the name of the owner or reputed owner or a statement to the effect that the person filing does not know the name will suffice.

The gist of the argument of defendants is that at the time of the filing of the lien statement record title was in the Campbells and that this constituted constructive notice to the plaintiff as to the name of the owner. It is said that the requirement of the owner's name is a strict one which must be complied with in order for the statement to be valid.

Sec. 86-3-9, supra, permits a claimant to insert the name of the owner or the reputed owner "or in case such name be not known to him, a statement to that effect." We observe that this language does not suggest strictness. The suggestion to be gleaned from the language is that identity of the property is the important aspect.

Defendant further argues that there is a dearth of evidence to show that Van Schaack was the reputed

owner. On this Van Schaack & Co. is shown to have a very considerable part in supervising the construction and in dealing with the contractor Meyer. It also made the disbursements. Under these circumstances, it was sufficient to name Van Schaack as owner.

The variance between the description set forth in the lien statement and the actual description consisting of failure to insert the words "First Addition to" in front of the name "Swansea" was of no consequence in view of the fact that the street address was given.

### III.

The question whether the doctrine of estoppel operated to bar the action turns finally on whether the contractor Meyer was paid in reliance on this lien statement. The evidence in this regard is conflicting. Defendants, acting through their agents, made a payment of $5,000 on October 17, 1957, to Meyer and made another payment on November 6, 1957. It would appear that the November 6 payment was not related to the transaction in question but was compensation to plaintiff for work performed on behalf of Meyer on another project. The court clearly ruled that this was not material.

Turning now to the October 17 check, we find that Voight, the agent of Van Schaack in this transaction, had a conversation with plaintiff in "the middle of October." He testified that "Graham told us that everything is taken care of now." Voight also said that he had an oral statement from Meyer to the effect that plaintiff had executed a lien waiver. The lien waiver was not seen by Voight until November 6 and it cannot be said that any payment was made to Meyer in reliance thereon. Graham in turn testified that he complained to Voight on each of three occasions when checks of Meyer were returned to him marked insufficient funds. He denied that he had represented to Meyer that he had been paid in full. In the final analysis, therefore, the evidence in support of defendants' theory of reliance on acts of plaintiff was disputed and the question is not

therefore now one of law. See *Davidson v. Jennings,* 27 Colo. 187, 60 Pac. 354.

A. The defendants next argue that it was error for the court to receive evidence that the plaintiff submitted an additional bid for the Smithcraft ceiling. This they say was in violation of the parol evidence rule in that it was a modification of the original contract. They cite *Light, et al. v. Rogers,* 125 Colo. 209, 242 P. (2d) 234. This argument overlooks the well recognized principle that the parol evidence rule does not prohibit testimony to establish a supplemental contract. The bid and acceptance on the Smithcraft ceiling qualified as a supplemental contract, having been made and accepted some 40 days after the original bid. Admission of this evidence was not in violation of the parol evidence rule.

B. The remaining ground upon which the defendants seek reversal is the ruling of the trial court admitting the deposition of Meyer, who was not present at the trial. Meyer testified in the deposition that he was a resident of Denver but that he was then employed in New Mexico. Counsel upon offering the deposition, stated in open court that he was advised that Meyer was unavailable and that he was then in New Mexico. Defendants argue that this was an insufficient basis for the trial court to conclude that the deposition was admissible in evidence pursuant to Rule 26, Rules of Civil Procedure. Rule 26 (d) (3) declares that a deposition may be used if the court finds the witness is dead, is absent from Colorado, or is at a distance in excess of 100 miles from the place of the trial or hearing. Subsection 4 of part (d) of the rule allows the deposition to be offered if the party has been unable to procure attendance by subpoena. This, however, is an alternative to the 100 miles provision. In connection with the latter, it cannot be said that a showing of unavailability by means of attempted subpoena is indispensable. It is for the court to decide whether the rule has been complied with. The amount and kind of evidence to establish

absence of the witness from the jurisdiction or beyond the 100-mile limit is a question for the determination of the trial court. *Meyers v. Karchmer* (Mo.), 313 S.W. (2d) 697 and 26 A C.J.S. 92 (2) (c) bb. The cases cited by counsel relating to admissibility of depositions in criminal cases are not applicable.

The other objection to the deposition of Meyer, namely, that it was not completed — that it was cut off during defendants' cross examination of Meyer — does not furnish a basis for a holding that it was inadmissible. The defendants' counsel terminated the deposition and went to court for a ruling. The court ruled adversely and the deposition was not thereafter finished. Counsel could have completed the deposition and reserved his objection to any question had he desired to do so. His failure in this respect does not render the deposition inadmissible.

The judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE MOORE concurring.