463 P.2d 111

**Paul A. EDWARDS and Murle Edwards, individually, and dba Edwards Brothers, also known as Edwards Trucking and Tractor Company, a co-partnership, and aka Edwards Brothers Company; Arthur H. Myers and Jane L. Myers, his wife; Jane Doe Linsenmeyer, wife of E. J. Linsenmeyer, deceased, Appellants,**

v.

**Morris C. VAN VOORHIS and Venit Van Voorhis, his wife, Appellees.**

**No. 1 CA–CIV 786.**

Court of Appeals of Arizona, Division 1. Department B.

Jan. 6, 1970.

Rehearing Denied Feb. 4, 1970.

Review Denied March 17, 1970.

---

Otto H. Linsenmeyer and Frank E. Dickey, Jr., Phoenix, for appellants.

Herbert Mallamo and Gust, Rosenfeld & Divelbess, by Robert T. Murphy, Phoenix, for appellees.

HAIRE, Judge.

Plaintiffs Morris C. Van Voorhis and his wife (appellees herein) commenced a foreclosure action against numerous defendants including Paul A. Edwards and Murle Edwards (appellants herein), who were the makers of the two notes secured by the mortgages being foreclosed. The executed notes and mortgages traveled through many hands and were eventually assigned, in 1963, to another of the defendants, Amscon Development Company. At this point there is some conflict as to which route these notes took in their further travels, it being plaintiffs' contention that the route taken leads to plaintiffs' door and that plaintiffs acquired ownership of the notes and mortgages prior to the commencement of this litigation, while the defendant mortgagors contend that the defendant Amscon still owned the notes and mortgages at the time this litigation was commenced, subject to an assignment for security purposes to the defend-

ant Reliance Small Business Investment Corporation. The defendant mortgagors further contend that subsequent to the commencement of this action they succeeded to the interests of Amscon and Reliance in the notes and mortgages, and that therefore the trial court erred in finding that plaintiffs were the owners of the notes and entitled to foreclose the mortgages.

 It is important to note that the defendants Amscon and Reliance did not raise in this litigation any claim that they owned these notes and mortgages. Rather, the claim of ownership in Amscon and Reliance was raised at the trial by the defendant mortgagors, Paul and Murle Edwards. Although the defendants Amscon and Reliance were duly served, they did not file an answer or make any appearance in this action. In fact, their defaults were duly entered, judgment was taken against them, and that judgment had become final prior to trial. One of the provisions of this default judgment against Amscon and Reliance specifically held that plaintiffs were the owners and holders of these notes and mortgages. In accordance with the notice of *lis pendens* recorded by plaintiffs at the commencement of the foreclosure action, the judgment further barred all persons claiming through Amscon and Reliance from and after the date of the recording of the *lis pendens* from claiming any right, title or interest in the mortgaged property adverse to the plaintiffs. The notice of *lis pendens* was recorded on February 16, 1965, the date the complaint was filed. Some six months thereafter, on September 9, 1965, the defendant mortgagors purported to purchase the subject notes and mortgages from the defendants Amscon and Reliance. The purchase price for these notes and mortgages was the issuance by the defendant mortgagors of a new note in the principal amount of $11,025.00[1] secured by a new

mortgage on the subject premises. However, provision was made in this new note and mortgage that no payment would ever become due unless the defendant mortgagors were successful in defending against plaintiffs in this action. Thus, the inference is raised that the motives of the defendant mortgagors in questioning plaintiffs' title was not to protect themselves from the possibility of double liability, but rather was an attempt to create a situation where they might be able to settle their obligations at less than fifty (50%) per cent of the balance owing thereon.

In our opinion almost all of the factual and legal controversies which consumed a large part of the trial court's time related to the rights of the defendants Amscon and Reliance, and these had been conclusively determined in plaintiffs' favor by the default judgment against Amscon and Reliance prior to the commencement of the trial. The default judgment complied with the requirements of Rule 54(b), Rules of Civil Procedure, 16 A.R.S., and therefore was a final adjudication. The principle is well established that a judgment by default is as conclusive an adjudication of the issues as a judgment rendered after a trial on the merits. 3 Barron & Holtzoff, Federal Practice and Procedure Sec. 1216 (Rules ed. 1958); 6 Moore's Federal Practice Sec. 55.07 at 1822 (2d ed. 1953); 30A Am.Jur. Judgments Sec. 222 at 295 (1958).

 Notwithstanding this adjudication, the defendant mortgagors contend that they proved that ownership of the notes and mortgages was not validly transferred from the defendants Amscon and Reliance to plaintiff,[2] and that this proof inured to the benefit of the defaulting defendants, citing 30A, Am.Jur. Judgments Sec. 204 (1958). Based upon this contention, the defendant mortgagors then argue that since this defense inures to the benefit of the defaulting defendants, Amscon and Reliance, the default judg-

---

1. The balance due on the old notes was $22,500.00 plus interest from July 15, 1964.

2. This claim is completely contrary to the express finding of the trial court that plaintiffs were the owners of the notes and mortgages involved.

ment must be set aside. As stated in the above cited Sec. 204, the question of whether a successful defense by some of several codefendants may inure to the benefit of a defaulting defendant, is dependent upon the nature, scope, and extent of the defense interposed by the answering defendant and the nature and extent of the right asserted. Here, there was no right asserted jointly against the defendant mortgagors and the defendants Amscon and Reliance. The defendant mortgagors' liability under the notes as makers was completely independent and separate from the claims asserted by plaintiffs against the defendants Amscon and Reliance. In all the cases coming to the court's attention which have allowed a subsequently established defense to inure to the benefit of a defaulting defendant, there has been an element of joint or vicarious liability involved which would make a judgment previously entered by default completely inconsistent with the subsequent finding of nonliability against the nondefaulting defendant. Here, there was no question concerning the validity of the notes and mortgages, that the defendant mortgagors were in default and liable to the rightful owners of the notes and mortgages. A judgment adjudicating rights among persons in the chain of title concerning these notes and mortgages would not be inconsistent in any way with any subsequent judgment against these defendant mortgagors adjudicating their liability or nonliability as makers of the notes. Undoubtedly the defendant mortgagors had the right to insist that plaintiffs show ownership of the notes and mortgages, but in our opinion this does not give defendant mortgagors the right to show ownership in third parties when those third parties, who were before the court, failed to assert such ownership in themselves, and allowed a default judgment to be entered against them.

■ The defendant mortgagors next contend that the default judgment against

the defendants Amscon and Reliance is invalid because the *defendant mortgagors* were given no notice of plaintiffs' application therefor, citing Rule 58(d), Rules of Civil Procedure, 16 A.R.S., and Phoenix Metals Corp. v. Roth, 79 Ariz. 106, 284 P.2d 645 (1955).

Rule 58(d) requires that certain judgments shall not be signed by the judge until

" * * * the expiration of five days after the proposed form thereof has been served upon opposing counsel unless the opposite party or his counsel endorses on the judgment an approval as to form. This subdivision shall not apply to parties in default." [3]

Counsel for the defendant mortgagors have not cited any authority for the proposition that in a default situation Rule 58(d) requires service upon and notice to opposing counsel not representing the party in default, and this court does not so interpret this rule. The Roth case cited by the defendant mortgagors dealt with the failure to give notice to parties who had appeared and against whom the default judgment was sought. In ROTH the court cited Rule 55(b), Rules of Civil Procedure, which expressly requires that before the entry of a default judgment notice be given to a party who has appeared, and held that a default judgment entered without such notice was void.

Rule 55, Rules of Civil Procedure, 16 A.R.S., specifies the notice required in a default situation, and in our opinion it does not require that notice be given to parties not being defaulted. Therefore, we hold that in the case before us plaintiffs were not required to give notice of the default hearing or of entry of the default judgment to the defendant mortgagors or their counsel.

■ The defendant mortgagors further contend that the default judgment was void because the notes and mortgages were not offered in evidence at the Amscon and

3. Reference is to language of Rule 58(d) as it read prior to its amendment effective November 1, 1967.

Reliance default hearing. We seriously question the defendant mortgagors' standing to urge this point, but in any event, suffice it to say that this contention is erroneous. Postal Ben Ins. Co. v. Johnson, 64 Ariz. 25, 165 P.2d 173 (1946).

Inasmuch as default judgment has been properly entered against the defendants Amscon and Reliance and the defendant mortgagors have no standing to set aside said judgment, we hold that the defendant mortgagors could not at the trial urge ownership in Amscon and Reliance as a defense. In view of this holding, many of the questions raised by the defendant mortgagors on this appeal are rendered immaterial since they deal with the admissibility of and the sufficiency of the evidence to support the trial court's express finding that the plaintiffs were the owners and holders of the notes and mortgages. By so holding we do not mean to intimate that in this court's opinion there is any merit in the questions raised relating to the sufficiency of the evidence to support such findings by the trial court. In fact we have reviewed the entire record and are of the opinion that the trial court's findings are adequately supported.

 Turning now to some of the many other questions raised by the defendant mortgagors in their double-barrelled approach to this appeal, the next contention is that the plaintiffs were improperly allowed to read into evidence the deposition of one Seargeant. The facts show that the sheriff served the deponent with a subpoena on a Friday. The following Wednesday morning, the second day of trial, the Clerk of the trial court received a telegram originating from Mexico in which the deponent's wife stated that her husband, due to illness, could not respond to the subpoena. The trial court then issued a body attachment to procure the deponent's attendance. The sheriff was unable to serve the body attachment. He found that there was no one at Seargeant's house and that newspapers and mail were piling up outside. Neighbors told the sheriff that Seargeant and his wife had been gone for three or four days. The trial court decided that, under the circumstances, there had been a *"prima facie* showing" of compliance with Rule 26(d) (3) (iv), Rules of Civil Procedure, 16 A.R.S., and that Seargeant's deposition could be read into evidence by plaintiffs.

Under Rule 26(d) (3) (iv), a deposition may be introduced into evidence at trial and used for any purpose when the court finds that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. This rule may be invoked when it is shown that the deponent has been properly subpoenaed, but has refused to comply with the subpoena and has left the jurisdiction of the court. 4 Moore's Federal Practice Sec. 26.30 at 1665 (1962). Once the conditions prescribed in the rule are met, evidence by deposition is freely admissible. Union Bank v. Safanie, 5 Ariz.App. 342, 427 P.2d 146 (1967). It is for the court to decide whether the rule has been complied with. Campbell v. Graham, 144 Colo. 532, 357 P.2d 366, 94 A.L.R.2d 1165 (1960). We are unable to find any abuse of the trial court's discretion in admitting the deposition under the above circumstances.

 The next contention raised by the defendant mortgagors is that the trial court erred in submitting the matter to the advisory jury for a general verdict based upon general instructions rather than submitting interrogatories propounded and tendered by defendants pursuant to Rule 39(l), Rules of Civil Procedure, 16 A.R.S. Rule 39(l) reads as follows:

"Interrogatories when equitable relief sought; answers advisory. In actions where equitable relief is sought, if a jury is demanded, and more than one material issue of fact is joined, the court may submit written interrogatories to the jury covering all or part of the issues of fact, and such interrogatories shall be answered by the jury. The interrogatories shall be approved by the court, and each interrogatory shall be

confined to a single question of fact and shall be so framed that it can be answered yes or no, and shall be so answered. The answers shall be only advisory to the court."

While the literal language of the rule seems to indicate that the submission of interrogatories is permissive rather than mandatory (see Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966)), the Supreme Court of Arizona has held that it is error for a trial court sitting in an equitable action to refuse to submit a requested interrogatory concerning a controverted question of fact to the advisory jury. Lane v. Mathews, 75 Ariz. 1, 251 P.2d 303 (1952). The Lane case did not involve the question of whether or not the matter could have been submitted to the advisory jury for a general verdict after appropriate instructions from the court as to the applicable law, and thus is not completely in point on the question here raised. Unquestionably, our Rules of Civil Procedure contemplate that interrogatories rather than instructions as to the law will be submitted to advisory juries in equitable actions. While in equitable actions it might well be error to refuse material interrogatories submitted by counsel, we do not need to decide this question because in this case the interrogatories submitted by counsel were improper or immaterial.

Five of the defendant mortgagors' eight proposed interrogatories dealt with facts which never had been [4] or no longer were [5] controverted or in dispute. Arizona law does not require submission of interrogatories concerning undisputed facts. Brooks v. Brooks, 60 Ariz. 119, 132 P.2d 431 (1942).

Likewise, the court did not err in declining to proffer an interrogatory [6] which, contrary to the express mandate of Rule 39(l), was not answerable "yes or no".

The trial court properly refused to tender the remaining two interrogatories. One [7] was objectionable as being immaterial, Kurdziel v. Van Es, 180 Kan. 627, 306 P.2d 159 (1957); 89 C.J.S. Trial § 531 (1955); it related to an insignificant typographical error and concerned a matter already adjudicated by the default judgment. The final [8] interrogatory would have required the jury to determine a question of law and was therefore properly excluded by the trial court. Corbett v. Kingan, 16 Ariz. 440, 146 P. 922 (1915); 89 C.J.S. Trial § 531 at 231 (1955).

The result of the foregoing is that the trial court sitting in this equitable action submitted the case generally upon instruc-

---

4. Plaintiffs had never asserted the existence of any corporate resolution, yet defendants sought submission of the following interrogatory:

"Did Amscon Construction Company, an Arizona corporation, authorize by corporate resolution, anyone to transfer the notes and mortgages Exhibits Nos. 1, 2, 4 & 5 to Pat Cavanaugh?"

5. The trial court dismissed defendants' counterclaim. It therefore refused to submit the following interrogatories directed principally at issues in that counterclaim:

(a) "Did Morris Van Voorhis and his wife, the plaintiffs, receive a request to satisfy the mortgages in issue in this case?"
(b) "If you find that Morris Van Voorhis and his wife did receive a request to satisfy the mortgages in this case, did Morris Van Voorhis and his wife sign and return the Satisfactions?"

(c) "If you find that Morris Van Voorhis and his wife did not sign the Satisfactions of Mortgage and did not return them, were defendants damaged by this action of plaintiffs?"
(d) "If you find that defendants were damaged by the failure of plaintiffs to return the satisfactions, set forth below the amount of damage."

6. "If you have found that the plaintiffs have proved the amount due and owing on the notes and mortgages and have proved all the other elements of their claim and are entitled to recover, then set forth the amounts found to be due."

7. "Was Amscon Construction Company, an Arizona corporation, ever known as Amsco Construction Company?"

8. "Did plaintiffs prove the amount due and payable on the notes and mortgages in issue in this case?"

tions to the advisory jury rather than upon special interrogatories, since all of defendants' interrogatories were improper and plaintiffs submitted none at all. This court recognizes that such is not the practice contemplated by Rule 39(*l*), Rules of Civil Procedure. However, when, as in this case, proper interrogatories are not requested by either party, we do not believe that the trial court commits reversible error by submitting the case to the advisory jury for a general verdict.

The defendant mortgagors raise many other questions on this appeal, all completely without merit, some of which we will discuss briefly. The trial court was not required to instruct the jury concerning the defense of usury, because the evidence was insufficient to support that defense. The trial court correctly ruled on defendant mortgagors' contentions concerning their demand for "items of account" pursuant to Rule 12(f), Rules of Civil Procedure. There was no reason for plaintiffs to submit such an account inasmuch as the defendants admitted that they had made no payments subsequent to the time they gave a written statement to plaintiffs showing the balance due.

One further point remains to be considered. Because the note sued upon provided for the payment of attorneys' fees to the holder thereof, plaintiffs contend that they are entitled to an award for the services of their attorneys on this appeal. We agree with this contention. Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636 (1961). We therefore allow plaintiffs reasonable attorneys' fees on appeal for to do otherwise would reduce the amount of plaintiffs' recovery contrary to the purpose of the provisions contained in the notes for the payment of attorneys' fees. As this court has no facilities for the taking of testimony to determine the amount of these fees, this matter is remanded to the trial court for a determination of the reasonable value of the services of plaintiffs' counsel in defending this matter on appeal and with directions to the trial court to modify the judgment heretofore entered against the defendant mortgagors to include the amount so found.

The judgment of the trial court is affirmed and this matter is remanded for further proceedings in accordance with this opinion.

EUBANK, P. J., and JACOBSON, J., concur.