**MOORE ELECTRIC COMPANY, a Colorado corporation, and Richard L. Moore, d/b/a Moore Electric, Inc., d/b/a Moore Electric Company, Plaintiffs-Appellants,**

v.

**AMBASSADOR BUILDER CORP., a Colorado corporation, Ambassador Homes, Inc., Joseph Demarco, Lana K. Demarco, Gary D. Sprague, Richard L.R. Duval, Agnes C. Duval, Melvin N. Johnson, Marcelite Johnson, Bobby L. Cox, Pauline S. Cox, and Clifford M. Utermoehlen, Defendants-Appellees.**

No. 81CA1258.

Colorado Court of Appeals,
Div. II.

Sept. 30, 1982.

Mason & Davis, Robert J. Mason, Colorado Springs, for plaintiffs-appellants.

Charles J. Haase, Colorado Springs, for defendants-appellees Ambassador Builder Corp., Ambassador Homes, Inc., Joseph DeMarco and Lana K. DeMarco.

VAN CISE, Judge.

Plaintiff Moore Electric Company (Moore) appeals from the trial court's dismissal of its mechanic's liens claims. We affirm.

Moore did electrical work pursuant to an agreement with defendant Ambassador Builder Corp., also known as Ambassador Homes, Inc. (Ambassador). When Moore was not paid, it filed two lien statements charging a number of properties with liens.

The first statement, filed on December 26, 1979, named Ambassador as the owner or reputed owner of the eight properties listed in the lien statement, and also named Ambassador as the principal contractor. On the back of the lien statement, plaintiff's attorney averred in an affidavit signed December 12, 1979, that on that date a notice of intent to file a lien was mailed (by certified mail, return receipt requested) to Ambassador, as the owner or the reputed owner of the listed properties and as the principal contractor.

The second lien statement, filed on February 22, 1980, named Ambassador and defendant Joe DeMarco (the sole shareholder of Ambassador), individually, as the owner or reputed owner of the listed properties, and listed DeMarco's individual residence (on which Moore had worked) and another property as the properties to be charged with a lien. The affidavit on the back of the statement, signed January 3, 1980, stated that on that date a notice of intent to file a lien was mailed (by certified mail, return receipt requested) to Ambassador as

owner or reputed owner and as principal contractor.

In March 1980, Moore commenced suit to foreclose its claimed mechanic's liens on the ten properties, naming Ambassador and the record owners of the liened properties as defendants. Prior to trial, two of the lien claims were released and no foreclosure was sought on those properties. Three other lien claims were dismissed for reasons not pertinent here. Following a trial, the remaining five lien claims were dismissed and judgment of dismissal was entered in favor of all defendants except Ambassador, based on the court's finding that the notices of intent to file mechanic's lien were defective in that the true owners of the properties against which the liens were asserted were not named therein. By stipulation, judgment was entered in favor of Moore Electric, Inc., and against Ambassador Builder Corp. for the amount owing for the electrical work, $6,811.59 (including interest) plus costs. The money judgment is not appealed.

On appeal of the judgment dismissing the lien claims, the sole issue presented for review is whether Moore complied with § 38–22–109(3), C.R.S.1973 (1981 Cum. Supp.), which provides in pertinent part:

"In order to preserve *any* lien for work performed or materials furnished, there *must* be a notice of intent to file a lien statement served upon the owner or reputed owner of the property or his agent and the principal or prime contractor or his agent at least ten days before the time of filing the lien statement with the county clerk and recorder." (emphasis added)

Moore contends that Ambassador supervised construction, paid the bills, and did everything to indicate that it was the owner or reputed owner, and that, therefore, the notice of intent was properly served. We do not agree.

▮▮▮ "Reputed owner" is defined as one who has to all appearances the title to, and possession of, the property. *Lowell Hardware Co. v. May,* 59 Colo. 475, 149 P. 831 (1915). Contrary to Moore's contention,

Ambassador's actions during the construction stage were entirely consistent with its role as general contractor and were not, standing alone, indicative of ownership.

Any claim of ownership, actual or reputed, is refuted by the record which contains copies of recorded warranty deeds by which Ambassador transferred its interests in the properties to private owners prior to the dates any notices of intent to file a lien were served on Ambassador. Thus, at the times the notices of intent were served on Ambassador, the actual owners of the properties were readily ascertainable from public records. Indeed, the actual owners were named in Moore's complaint in foreclosure, filed in March 1980.

Moore argues, however, that its failure to serve the actual owners is not fatal to the existence of the liens. In support of this argument, Moore contends that the rationale of *Campbell v. Graham,* 144 Colo. 532, 357 P.2d 366 (1960), and *McIntire & Quiros of Colorado, Inc. v. Westinghouse Credit Corp.,* 40 Colo.App. 398, 576 P.2d 1026 (1978) is applicable. Both of these cases deal with lien statements and are distinguishable.

In *Campbell,* the Supreme Court determined that the failure to name the true owner in the lien statement did not void the lien statement. The Court noted that under C.R.S.1953, 86–3–9, the lien statement must include the name of the owner or reputed owner "*or in case such name be not known to [the lien claimant], a statement to that effect.*" The court observed that this emphasized language did not suggest strictness and that the "suggestion to be gleaned from the language is that identity of the property is the important aspect."

In *McIntire,* the lien claimant filed a lien statement against two developers as owners of the subject property, but did not name some 800 persons who had purchased lots from the developers. In holding that the lien statement was not void, this court noted that the statute then governing the contents of the lien statement was virtually identical to the 1953 version. *Compare* § 38–22–109(1)(a), C.R.S.1973, *with* C.R.S.

1953, 86–3–9. Accordingly, the court relied on *Campbell.*

However, both cases were governed by statutes in effect prior to the 1975 amendments to § 38–22–109, C.R.S.1973. Moreover, both cases involved the specificity required in the actual lien statement. Importantly, at the time those cases were decided, no prior notice of an intent to file a lien was required. Rather, § 38–22–109(3), C.R.S.1973, provided that in order to preserve a lien for work performed or materials furnished by a subcontractor, the owner or reputed owner of the property must be served with a copy of the lien statement at or before the time of filing. C.R.S.1953, 86–3–9, provided similarly.

In 1975, § 38–22–109(3), C.R.S.1973, was amended to provide as quoted above. "[This] amendment demonstrates a clear legislative intent to require the statutory notice in order to perfect a valid lien." *Daniel v. M.J. Development, Inc.,* 43 Colo. App. 92, 603 P.2d 947 (1979).

The statutory language pertaining to the lien statement in C.R.S.1953, 86–3–9, relied upon in *Campbell, supra,* was not carried over into the requirement in § 38–22–109(3), C.R.S.1973 (1981 Cum.Supp.) that a *notice of intent to file a lien* be provided. In addition, while, under the prior version of § 38–22–109(3), service of a copy of the *lien statement* at or before the time of filing the statement with the recorder could be foregone if the owner or reputed owner could not be conveniently found, the current version of § 38–22–109(3) provides no such exceptions. It requires that a copy of the *notice of intent* be served personally or by registered or certified mail addressed to the last known address of such person, such service to be made at least ten days before filing the lien statement. It thus appears that the general assembly intended strict compliance with the requirement of service of the notice of intent.

Accordingly, we hold that Moore did not comply with the language or intent of § 38–22–109(3), C.R.S.1973 (1981 Cum. Supp.) and, therefore, failed to meet its burden of proving its right to a lien under the statute. *See Daniel v. M.J. Development, Inc., supra.*

 Moore suggests that defendant De-Marco, being the president, the sole stockholder, and a director of Ambassador, had notice as to the intended filing of a lien on his personal residence when the notice of intent was served on Ambassador. However, the statute explicitly provides that the notice must be served on the owner or reputed owner. Section 38–22–109(3), C.R.S.1973 (1981 Cum.Supp.). Moore's own evidence established that, at the time the notice of intent was served on Ambassador, Moore knew that DeMarco was the owner of the residence. Moore's service of the notice on Ambassador by mail was insufficient to constitute service of a notice of intent on DeMarco.

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.