2014 COA 111

**SURE–SHOCK ELECTRIC, INC.,**
**Plaintiff–Appellee and**
**Cross–Appellant,**

v.

**DIAMOND LOFTS VENTURE,**
**LLC, Defendant–Appellant**
**and Cross–Appellee.**

Court of Appeals No. 12CA1655
& 12CA2200

Colorado Court of Appeals,
Div. IV.

Announced August 28, 2014

Rehearing Denied October 9, 2014

Sweetbaum Sands Anderson, P.C., Alan D. Sweetbaum, Katherine Karamalegos Kust, Denver, Colorado, for Plaintiff–Appellee

Lewis Roca Rothgerber, LLP, Kris J. Kostolansky, Jaclyn K. Brown, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE FOX

¶ 1 Diamond Lofts Venture, LLC (DLV) appeals the trial court's judgment allowing Sure–Shock Electric, Inc. (Sure–Shock) to foreclose on a mechanics' lien. Sure–Shock cross-appeals. We affirm.

## I.   Background and Procedural History

¶ 2 The facts in this case are not in dispute. DLV was the developer and owner of a building project at 2210 Blake Street in Denver (Blake Street property). The Blake Street property has two commercial units on the first floor and twenty-seven residential

units on floors two through five. Sure–Shock was the primary electrical contractor on the project and installed the electrical work throughout the building.

¶ 3 In October 2007, Sure–Shock filed a mechanics' lien for the unpaid contract price. The same day, Sure–Shock filed an amended lien statement for the unpaid contract price plus interest. The original and the amended lien statements identified the Blake Street property as the property charged with the lien, but DLV as the only owner. However, DLV only owned seven (DLV units) of the twenty-nine units at that time, having sold the rest. Sure–Shock later clarified that its lien was only against the units DLV owned when Sure–Shock's lien was filed.

¶ 4 Sure–Shock then filed a complaint against DLV asserting claims for breach of contract and unjust enrichment, and to foreclose on the lien. Pursuant to their contract, DLV and Sure–Shock first participated in arbitration. The arbitrator determined that Sure–Shock had proved its claims, and awarded it the principal amount claimed in the amended lien statement. A division of this court affirmed the district court's affirmation of the arbitration award and remanded to the trial court the issue whether the lien was procedurally valid. *Sure–Shock Elec., Inc. v. Diamond Lofts Venture, LLC,* 259 P.3d 546, 550 (Colo.App.2011).

¶ 5 After a bench trial, the trial court found that Sure–Shock's lien was procedurally valid, and it apportioned the lien to the seven DLV units. Though Sure–Shock had performed electrical work throughout the building, the court determined that the DLV units would only be responsible for a portion of the lien relative to each unit's square footage. The court entered a decree of foreclosure authorizing the sale of the DLV units to satisfy Sure–Shock's lien.

¶ 6 In this appeal, DLV contends that the trial court erred in allowing Sure–Shock to foreclose on its lien because (1) Sure–Shock did not comply with statutory notice requirements; (2) the lien statement did not sufficiently describe the property charged with the lien; and (3) Sure–Shock's assertion of a blanket lien lacked good faith. DLV also contends that the trial court erred in awarding Sure–Shock costs because it was not the prevailing party below. On cross-appeal, Sure–Shock contends that the trial court erred in apportioning the lien. We affirm.

## II. Validity of the Lien

¶ 7 DLV first contends that the trial court erred in allowing Sure–Shock to foreclose on its lien because Sure–Shock failed to comply with the statutory requirements necessary to perfect the lien. We disagree.

### A. Standard of Review

¶ 8 We review a trial court's application of the mechanics' lien statute de novo. *See Ferguson Enters., Inc. v. Keybuild Solutions, Inc.,* 275 P.3d 741, 745 (Colo.App.2011). The mechanics' lien statute's notice requirements and the contents of the required lien statement relate to the perfection of the lien, and thus must be strictly construed. *See id.*

### B. Notice of Intent to File a Lien

¶ 9 DLV first argues that Sure–Shock's amended lien is invalid because Sure–Shock did not comply with the statutory notice requirements.

¶ 10 To preserve the right to assert a lien, a lien claimant must provide a "notice of intent to file a lien" to the property owner at least ten days before filing the lien statement with the county clerk and recorder. § 38–22–109(3), C.R.S.2013; *Skyland Metro. Dist. v. Mountain W. Enter., LLC,* 184 P.3d 106, 116 (Colo.App.2007) ("If a mechanics' lien claimant fails to comply with the requirement of service of the notice of intent, he or she fails to meet the burden of proving a right to the lien under the statute."). And a lien claimant can file a "[n]ew or amended" lien statement within the time period specified in the statute "for the purpose of curing any mistake or for the purpose of more fully complying with the provisions of [the statute]." § 38–22–109(6).

¶ 11 The parties agree that Sure–Shock provided DLV with proper notice more than ten days before filing the original lien statement, but DLV contends that Sure–Shock did not provide an additional ten-day notice before filing the amended lien statement. The amended lien statement was filed the same day as the original lien. The only

difference between the original lien and the amended lien was the amount claimed.

¶ 12 DLV—relying on *Everitt Lumber Co. v. Prudential Ins. Co. of Am.*, 660 P.2d 925, 926 (Colo.App.1983), and *Moore Elec. Co. v. Ambassador Builder Corp.*, 653 P.2d 90, 93 (Colo.App.1982)—argues that Sure–Shock's lien is invalid because Sure–Shock did not provide DLV with a new notice of intent before filing its amended lien statement. We are not persuaded.

■ ¶ 13 The purpose of the notice requirement is to allow property owners to pay their debts before a lien is filed. *See* Jack Greenwald, *Colorado Liens and Claims Handbook* § 2.7.2 (4th ed.2013); 53 Am. Jur.2d, *Mechanics' Liens* § 181 (2014). Even strictly construing the notice provision, we do not read the statute to require additional notice for an amended lien statement when neither the property owner nor the property described changed.

¶ 14 DLV does not claim any defect in the notice Sure–Shock provided for its original lien. The amended lien represented the same claims asserted in the original lien. The amended lien differed from the original lien only in the amount of the claim.

¶ 15 This case is distinguishable from *Everett Lumber* and *Moore Electric* because the lien claimants in those cases failed to provide the property owners with notice before filing a lien statement. *See Everitt Lumber Co.*, 660 P.2d at 926; *Moore Elec. Co.*, 653 P.2d at 93. Here, DLV was provided notice of Sure–Shock's claims.

¶ 16 Because Sure–Shock provided DLV with proper notice before filing the original lien, and the amended lien only corrected the lien amount, *see* § 38–22–109(6), we conclude that Sure–Shock provided proper notice to DLV under § 38–22–109(3).

### C. Property Description

■ ¶ 17 DLV next argues that Sure–Shock's lien is invalid because the property description in the lien statement was too broad, and it did not sufficiently describe the property charged with the lien. *See* § 38–22–109(1).

¶ 18 To assert a mechanics' lien, the claimant must file a lien statement containing:

(a) The name of the owner or reputed owner of such property, or in case such name is not known to him, a statement to that effect;

(b) The name of the person claiming the lien, the name of the person who furnished the laborers or materials or performed the labor for which the lien is claimed, and the name of the contractor when the lien is claimed by a subcontractor or by the assignee of a subcontractor, or, in case the name of such contractor is not known to a lien claimant, a statement to that effect;

(c) A description of the property to be charged with the lien, sufficient to identify the same; and

(c) A statement of the amount due or owing such claimant.

§ 38–22–109(1).

■ ¶ 19 A property description in a lien statement must be sufficient to identify the property "with reasonable certainty, to the exclusion of others." *Cary Hardware Co. v. McCarty*, 10 Colo.App. 200, 211, 50 P. 744, 748 (1897); § 38–22–109(1)(c).

¶ 20 Sure–Shock's lien statement described the entire Blake Street property and named only DLV as the property owner. However, when the lien was filed, DLV only owned seven of the twenty-nine units in the Blake Street property. Sure–Shock sought to enforce its lien only against the DLV units. The dispute hinges on whether the overbroad property description was sufficient to identify DLV's units "to the exclusion of others." *Cary Hardware Co.*, 10 Colo.App. at 211, 50 P. at 748.

¶ 21 DLV argues that Sure–Shock's lien is invalid because the lien statement did not sufficiently identify the DLV units to the exclusion of the remainder of the Blake Street property, and the owners of the remaining units were therefore at risk of clouds on their titles. But DLV does not explain why it has standing to assert that the remaining unit owners were harmed. Instead, DLV simply suggests that if Sure–Shock's lien statement had named all of the unit owners, it would have been a valid blanket lien. *See* § 38–22–103(4), C.R.S.2013 (permitting a blanket lien against more than

one property when the labor or materials were provided under a single contract).

¶ 22 Sure–Shock argues that because DLV was the only owner against whom the lien was asserted, the property description was sufficient to identify the DLV units to the exclusion of the remainder of the units in the Blake Street property. We agree with Sure–Shock.

¶ 23 Colorado cases have long held that an over-broad property description in a lien statement does not invalidate an otherwise valid lien. *See First Nat'l Bank in Fort Collins v. Sam McClure & Son, Inc.,* 163 Colo. 473, 480, 431 P.2d 460, 463 (1967) (holding that a lien was valid against the portion of the property described in the lien statement, even though the entire property benefited from the work); *Miller v. Davis,* 26 Colo.App. 483, 485, 145 P. 714, 715 (1915) (holding that a mistake in the property description in a lien statement did not invalidate the lien); *Cary Hardware Co.,* 10 Colo. App. at 214, 50 P. at 749 (holding that a lien statement describing "too large a tract of land" did not render the lien invalid when the land properly subject to the lien was included in the tract described, and no innocent party was misled and prejudiced).

¶ 24 Section 38–22–109(3) requires that a lien claimant provide the property owners with a "notice of intent to file" at least ten days before filing the lien statement in order to preserve the right to a lien. *See Moore Elec. Co.,* 653 P.2d at 93. A lien is not valid against property owners who were not given notice. *Skyland Metro. Dist.,* 184 P.3d at 116 ("If a mechanics' lien claimant fails to comply with the requirement of service of the notice of intent, he or she fails to meet the burden of proving a right to the lien under the statute."); *Moore Elec. Co.,* 653 P.2d at 93 (holding that a lien was not valid against owners who were not served with a notice of intent).

¶ 25 We have already concluded that Sure–Shock provided DLV with proper notice of its intent to file a lien. Like the notice of intent, Sure–Shock's lien statement identified only DLV as the property owner. Thus, Sure–Shock preserved its right to assert a lien against the DLV units, and it could not have asserted a lien against the remainder of the Blake Street property. *See Moore Elec. Co.,* 653 P.2d at 93. DLV did not explain how a valid cloud on the absent owners' titles could be created without the required notices. Because DLV was in the best position to know what units it still owned when Sure–Shock's lien was filed, DLV was neither misled nor prejudiced. *Cary Hardware Co.,* 10 Colo.App. at 212–14, 50 P. at 749.

¶ 26 Taken together, the notice of intent to file a lien sent to DLV, the lien statement identifying DLV as the property owner, and the over-broad, but satisfactorily inclusive, property description were sufficient to identify the units owned by DLV to the exclusion of others. *See Moore Elec. Co.,* 653 P.2d at 93; *Cary Hardware Co.,* 10 Colo.App. at 211–12, 50 P. at 748; *cf. Compass Bank v. Brickman Grp., Ltd.,* 107 P.3d 955, 958 (Colo. 2005) ("The [mechanics' lien] statute was not intended, however, to force a claimant to choose whether to apportion or file a blanket lien, and later pay for even a harmless mistake of fact or law by losing his whole lien.").

D. Good Faith Blanket Lien

¶ 27 Finally, DLV argues that Sure–Shock's blanket lien is invalid because it included fewer than all the units in the Blake Street property that benefited from Sure–Shock's work under one contract. *See* § 38–22–103(4); *Compass Bank,* 107 P.3d at 958. According to DLV, Sure–Shock's lien was filed in bad faith because Sure–Shock should have apportioned the unpaid contract price according to the amount due for work on the DLV units, rather than claiming the full amount due.

¶ 28 DLV cites no statute or case law, and we have found none, supporting this argument. To the contrary, in *Compass Bank,* the supreme court held that it is irrelevant whether the lien claimant could have apportioned the lien amount in the lien statement:

[W]here a claimant has chosen to file a blanket lien, we have held that the failure to show that the claim cannot be apportioned is not a defect in the action itself but merely goes to the availability of relief. As long as there is support for any kind of lien, the court is not barred from allowing

a segregated lien or liens against each property. If a claimant chooses in good faith to file a blanket lien on more than one structure or improvement, and it turns out that an apportionment is possible after all, the court may therefore equitably apportion the debt in its decree.

107 P.3d at 959 (citation omitted). *Compass Bank* holds that lien claimants need not apportion a blanket lien among the individual properties because "Colorado law permits a mechanics' lien to include and be enforced against more than one but fewer than all of the properties benefiting under the same contract, as long as a proper apportionment of the debt can be made." *Id.* at 957.

¶ 29 DLV's contention that Sure–Shock acted in bad faith by failing to apportion its lien has no evidentiary or legal support. As we noted earlier, DLV, not Sure–Shock, was in the best position to know which units DLV retained and which units DLV had sold. The trial court remedied any claimed error by apportioning the lien amount based on the work done on the DLV units.

¶ 30 For the foregoing reasons, we conclude that the trial court did not err in allowing Sure–Shock to foreclose on its lien.

### III. Apportionment

¶ 31 In its cross-appeal, Sure–Shock contends that the trial court abused its discretion in apportioning the lien. We disagree.

#### A. Applicable Law and Review Standard

¶ 32 A court may equitably apportion a blanket lien. *Id.* at 959. "Equity in apportioning the value of work done under a single contract (and therefore equity in apportioning the debt remaining on the contract) necessarily depends upon the proportion in which each of the [encumbered] structures or properties benefited from the work done under the contract." *Id.* at 960. The lien claimant's decision to include some but not all of the properties benefiting from a contract affects the extent to which the lien claimant can recover its debt because "the remaining debt can be recovered from the remaining encumbered properties, if at all, only to the extent that each actually benefited from the work performed under the contract." *Id.* at 960–61.

¶ 33 We review the trial court's apportionment decision for an abuse of discretion. *See Lewis v. Lewis,* 189 P.3d 1134, 1140 (Colo.2008) (upholding the general principle that the power to fashion equitable remedies lies within the sound discretion of the trial court). "We will not disturb such a ruling absent an abuse of discretion that is manifestly arbitrary, unreasonable, or unfair." *Churchill v. Univ. of Colo. at Boulder,* 293 P.3d 16, 33–34 (Colo.App.2010), *aff'd on other grounds,* 2012 CO 54, 285 P.3d 986.

#### B. Analysis

¶ 34 The trial court determined that an equitable apportionment should be based on the actual benefit enjoyed by each unit. The court apportioned the lien amount based on the square footage of each unit because the amount of electrical work performed in each unit was relative to the size of the unit. Therefore, Sure–Shock was awarded 33.1% of the lien amount, which corresponded to the total square footage of the DLV units relative to the square footage of the entire Blake Street property.

¶ 35 Sure–Shock argues that the trial court abused its discretion and should have either (1) apportioned the entire lien amount to the DLV units (rather than 33.1% of the lien amount) or (2) apportioned 33.1% of the entire contract price to the DLV units (rather than only the unpaid portion of the contract price). We are not persuaded.

¶ 36 Sure–Shock's first proposed alternative is contrary to *Compass Bank,* 107 P.3d at 960–61. Because Sure–Shock's electrical work benefited the entire Blake Street property, and Sure–Shock chose to encumber only the DLV units, Sure–Shock may not recover the entire unpaid amount of the contract. *See id.*

¶ 37 Sure–Shock's second alternative—that the court should apportion the total contract price, rather than the lien amount—is contrary to § 38–22–109(1)(d), which requires a lien statement to include the amount due. *FCC Constr., Inc. v. Casino Creek Holdings, Ltd.,* 916 P.2d 1196, 1199 (Colo.App.1996). Sure–Shock cites no case, and we have found none, that permits a lien claimant to assert a

lien for the entire contract amount regardless of what is then due.

¶ 38 A division of this court approved the arbitration award, equal to the amount due plus interest, which was the principal amount claimed in Sure–Shock's amended lien statement. *Sure–Shock Elec.*, 259 P.3d at 548 ("By determining the amount of debt owed by DLV to Sure–Shock on the underlying contract and unjust enrichment claims, the arbitrator necessarily decided the amount of any mechanic[s'] lien."). Sure–Shock was therefore precluded from asserting a different lien amount in the apportionment proceedings in the trial court or on appeal. *See People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983) ("The law of the case as established by an appellate court must be followed in subsequent proceedings before the trial court.").

¶ 39 The parties did not present sufficient evidence for the court to make an apportionment based on a factor other than the square footage of the units. Sure–Shock has not shown that the trial court's apportionment of the lien amount based on square footage of the DLV units was inequitable, manifestly arbitrary, unreasonable, or unfair. *See Compass Bank*, 107 P.3d at 960. Accordingly, we conclude that the trial court's apportionment was not an abuse of its discretion. *See Churchill*, 293 P.3d at 33–34.

### IV.  Award of Costs

¶ 40 Finally, DLV contends that the trial court erred in awarding costs to Sure–Shock because Sure–Shock was not the prevailing party below. We disagree.

### A.  Applicable Law and Review Standard

¶ 41 C.R.C.P. 54(d) permits a court to award costs to the prevailing party. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo.2004). A "prevailing party" is one that prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation. *Id.* The number of claims upon which a party prevails or the amount awarded for those claims is not determinative. *Id.*

¶ 42 Where a case involves many claims, some of which are successful and some of which are not, the trial court has discretion to determine which party, if any, is the prevailing party and whether to award costs. *Id.* at 231. An award of costs under C.R.C.P. 54(d) will not be disturbed unless it is manifestly arbitrary, unreasonable, or unfair. *Id.* at 230.

### B.  Analysis

¶ 43 The trial court concluded that Sure–Shock was the prevailing party below because DLV ultimately lost its claim that Sure–Shock's lien was invalid. DLV argues that because Sure–Shock did not prevail in its apportionment argument, it was not the prevailing party below.

¶ 44 Because Sure–Shock's lien was determined to be valid, Sure–Shock succeeded on a "significant issue in the litigation." *See id.* at 230–31; *see also Weeks v. City of Colorado Springs*, 928 P.2d 1346, 1350 (Colo.App.1996) (holding that the party in whose favor the verdict on liability was rendered was the prevailing party, even though the party could not receive a money judgment). Accordingly, the trial court did not abuse its discretion in concluding that Sure–Shock was the prevailing party.

### V.  Conclusion

¶ 45 The judgment is affirmed.

JUDGE GRAHAM and JUDGE PLANK*, concur.

---

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2013.